Timothy Carl **SHANE**, Appellant

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 2006–SC–000096–MR.

Supreme Court of Kentucky.

Dec. 20, 2007.

As Modified April 9, 2008.

Frank W. Heft, Jr. and J. David Niehaus, Jefferson District Public Defenders, Louisville, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, David W. Barr, Assistant Attorney General, Office of Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant, Timothy Carl Shane, was indicted in Jefferson County, charged with Rape in the First Degree, Sodomy in the First Degree, Burglary in the First Degree, and Persistent Felony Offender in the Second Degree (PFO Second). He was tried by a Jefferson County jury and convicted as charged on the burglary and PFO Second. He was sentenced to a term of twenty years' imprisonment, enhanced to thirty-five years by the PFO Second charge. On appeal, he argues that the trial court erred in denying his motion to dismiss based on an eleven year delay; in denying his motion to strike Juror 138 for cause; in forcing him unconstitutionally to use a peremptory strike for cause; and in denying his motion for a directed verdict. He asks this Court to overrule *Morgan v. Commonwealth*, 189 S.W.3d 99 (Ky.2006), which held, among other unrelated issues, that the trial court error in failing to strike a juror for cause was harmless. This Court finds that the issue regarding peremptory strikes and Juror 138, and the application of *Morgan* has merit, and therefore reverses and overrules *Morgan*. The pre-trial delay claim of error is addressed and affirmed.

## I. Background

At trial, Appellant moved to strike Juror 138 for cause. This juror was a Louisville Metro police officer who was not an officer when the crime was committed. At the time of trial, however, he worked for the same agency and had worked in the same district as two officers who were involved in the investigation, Detectives Shifflet and Felty, and knew them. Shifflet testified at trial. Juror 138 stated on voir dire that his past association with police officers would not affect his ability to be an impartial juror, but then went on to say that he had "an inside point of view"; that he was "absolutely" pro-police; that while "police are just like everybody else," he did not believe they would lie under oath because they took the oath more seriously; and that he would find it more likely that a police officer was telling the truth than a lay witness.

Appellant moved to strike Juror 138 for cause due to his acquaintance with the two detectives, his "insider view" and his being

"police oriented." In denying the motion to strike for cause, the trial court stated that Juror 138 did not currently work with the two detectives and had no knowledge of the case. Appellant ultimately used all nine of his peremptory challenges, one of them for Juror 138. After his conviction and sentencing, Appellant appealed to this Court as a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

### A. Trial Court Error

■ Long-standing Kentucky law has held that a trial court's decision on whether to strike a juror for cause must be reviewed for abuse of discretion. *Adkins v. Commonwealth*, 96 S.W.3d 779 (Ky. 2003); *Pendleton v. Commonwealth*, 83 S.W.3d 522 (Ky.2002). The court must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor. There is no "magic question" that can rehabilitate a juror as impartiality is not a technical question but a state of mind. *United States v. Wood*, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936); *Pennington v. Commonwealth*, 316 S.W.2d 221 (Ky.1958). When the question is analyzed as to whether the trial court judge abused his discretion, a reviewing court must determine if the trial court had a sound legal basis for his ruling. If a judge errs on a finding of fact, he must be clearly erroneous or there is no error; if error is premised on incorrect application of the law, a judge abuses his discretion when the legal error is so clear that there is no room for the judge to have ruled any differently. RCr 9.36 requires a judge to excuse a juror if there is a reasonable basis to believe the juror cannot be fair and impartial.

Before a judge can come to the legal conclusion that a juror is or is not qualified at the voir dire stage, he must determine the credibility of the juror's answers. For instance, a juror might say he can be fair, but disprove that statement by subsequent comments or demeanor so substantially at odds that it is obvious the judge has abused his discretion in deciding the juror is unbiased.

■ Here, Juror 138's responses in their entirety indicated a probability that he could not enter the trial giving both sides a level playing field. His statement that he was "absolutely" pro-police and that he did not believe an officer would lie under oath clearly indicated that a defendant would have little or no chance of challenging an officer's testimony in this juror's mind. Also, the trial court's reasons for denying cause are not germane to whether the juror was biased based on his statements. Given the reasonable evidence of bias here, it was an abuse of discretion not to strike this juror, and thus is error.

### B. Harmless Error and the *Morgan* Standard

■ Appellant argues that the holding in *Morgan v. Commonwealth*, 189 S.W.3d at 104, should be reversed. In *Morgan*, this Court held that the trial court's error in not properly striking a juror for cause was harmless (even though the defendant therein had to exercise a peremptory challenge to remove a biased juror), because no unqualified juror sat on his case. He further argues that the *Morgan* holding gives trial court judges "insulation from appellate review." The majority in *Morgan* focused on whether the defendant had in fact been tried by an impartial jury, and concluded that he had. Its logic appeared inescapable that the failure to strike a juror for cause could not have affected that jury's verdict, and therefore the trial court judge's abuse of discretion was harmless error. What the majority in *Morgan* did

not focus on was whether the trial court's error affected the actual fairness of the trial because the defendant was not allowed fair process in selecting the jury that tried him.

It is a fundamental tenet that a person charged with a crime is entitled to a fair *trial.* RCr 9.36(1) establishes the standard a trial judge is required to apply in voir dire: "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, he shall be excused as not qualified."

The language to the trial court is mandatory. RCr 9.40 gives a defendant eight peremptory challenges plus one if alternates are seated. This Court, in its rule-making capacity, has recognized that this is beyond question a valuable right going to the defendant's peace of mind and the public's view of fairness. It is fundamentally inconsistent for the Court to give with one hand and take away with the other, a position that does not invite public trust in the integrity of the judicial system. In distinguishing *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)—which held that an Oklahoma law that required a defendant to prove that an incompetent juror was forced upon him—was not unconstitutional, Justice Leibson wrote in *Thomas v. Commonwealth,* 864 S.W.2d 252 (Ky.1993):

> Kentucky law has always been to the contrary, that prejudice is presumed, and the defendant is entitled to a reversal in those cases where a defendant is forced to exhaust his peremptory challenges against prospective jurors who should have been excused for cause.... When a defendant *does* exhaust all of his peremptory challenges, he has been denied the full use of peremptory challenges by having been required to use

peremptory challenges on jurors who should have been excused for cause.

*Id.* at 259 (internal citations omitted).

Justice Leibson went on to point out that when a defendant is forced to use a peremptory strike on a juror who has not been properly excused for cause, the court has actually *taken away* from the number of peremptories given to the defendant by rule of this Court. By their very nature, peremptory challenges are not for cause; they can be for any reason whatsoever, except that the juror is a member of a protected class. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To shortchange a defendant in this manner is to effectively give the Commonwealth more peremptory challenges than the defendant. The reverse is true if the court fails to properly strike for cause a juror unfavorable to the Commonwealth. A trial is not fair if only parts of it can be called fair.

The Court in *Morgan* was very divided. The justices differed over whether peremptory strikes were a substantial right entitled to per se protection or merely a procedural right that supported the substantial (and constitutional) right to a fair trial, whereby having to use a peremptory strike for a juror who should have been struck for cause was not prejudicial so long as a qualified jury was seated. The Court in *Thomas* had merely held that Kentucky law, as opposed to federal law, regarded peremptories as a substantial right not to be shortchanged by a trial court's failure to properly strike for cause. Three justices agreed to reverse *Thomas;* a fourth wrote separately, concurring in result only, (thereby creating a majority for the result of the case) and was joined by one of the other three. Three justices dissented, with two writing separately, and all three joining in both Opinions. This made the final result three for, three

against, and one who concurred to make a majority but would have written a different majority opinion.

Both the majority and dissent in *Morgan* focused on the fairness and impartiality of the jury that was selected. The majority took the view that if the jury the defendant ended up with was qualified, it was a fair jury and the defendant had received a fair trial. The dissent held fast to the notion that peremptories were a protected substantial right under state law, and that a jury selected by causing a defendant to exhaust his peremptories on a juror who should have been excused for cause could not be fairly seated. Given that *Thomas* was controlling authority at the time, this argument had merit.

The issue is actually simple: Can a trial be called fair and the jury impartial if the method of arriving at a qualified jury is not? The majority in *Morgan* would accept that a defendant could stumble into fairness even if everything that occurred before the jury was selected was not.

If a right is important enough to be given to a party in the first instance, it must be analyzed to determine if it is substantial, particularly where deprivation of the right results in a final jury that is not the jury a party was entitled to select. Here, the defendant was tried by a jury that was obtained by forcing him to forgo a different peremptory strike he was entitled to make. If he had been allowed that strike, he may well have struck one of the jurors who actually sat on the jury. He came into the trial expecting to be able to remove jurors that made him uncomfortable in any way except in violation of *Batson v. Kentucky*; this was a right given to him by law and rule. Depriving him of that right so taints the equity of the proceedings that *no* jury selected from that venire could result in a fair trial. No jury

so obtained can be presumed to be a fair one.

An error affecting the fundamental right of an unbiased proceeding goes to the integrity of the entire trial process. While the federal courts may not regard peremptory strikes as a Constitutional guarantee to either litigant, prior Kentucky law has determined that it is a substantial right when a defendant uses all his peremptory strikes and was forced to use one of them on a juror who should have been struck for cause. To do anything less is to make a mockery of the very rules and procedures created by this Court, and indeed does allow a trial court to commit error under the *Morgan* holding that is not subject to correction because all the jurors who sat were qualified. Qualified or not, that is not the jury the defendant was given a fair opportunity to acquire.

In *United States v. Martinez–Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), a federal case factually similar to this case, the United States Supreme Court determined that a defendant is not required to use a peremptory strike to correct a trial judge's error, but if he does, and the resulting jury is unbiased, there has been no violation of a constitutional right or federal rule-based right. Referencing *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), where the Court had determined that Ross had received "all that was due under Oklahoma law," *id.* at 92, 108 S.Ct. at 2275, it found that the defendant had "received precisely what federal law provided." *Martinez–Salazar*, 528 U.S. at 317, 120 S.Ct. at 782.

However, it should be noted that both *Ross* and *Martinez–Salazar* hinge on "what was due" under the state or federal law. Both cases recognize that there is an entitlement to what has been given to a defendant by way of process, and if an act of the trial court negates that process,

reversal is required. *Cf. id.* (noting that the due process claim failed only because the defendant received what he was entitled to under the federal rules); *Ross,* 487 U.S. at 89, 108 S.Ct. at 2279 (same under state law). They both merely affirm longstanding federal law that there is no constitutional right which requires the granting of peremptory strikes. Rather, whether to give peremptory strikes, and how many, has been left to the states to determine for their own courts by statute or rule, not through their constitutions. *Morgan,* 189 S.W.3d at 124 (Cooper, J., dissenting).

There is nothing in either *Ross* or *Martinez–Salazar* that requires the states to adopt their reasoning as to the weight, or "substantial" value a state may place on the exercise of peremptory strikes. Giving a lengthy description of the history of peremptory strikes in his dissenting opinion in *Morgan,* Justice Cooper traces the use of peremptories from the 1700's to the date of *Morgan,* concluding that while there is no constitutional guarantee to peremptory strikes, our law has held the exercise of peremptory strikes to be a "substantial right," citing numerous Kentucky cases where a juror had not been struck for cause and the defendant used all his peremptories. *Id.* at 135–37. The thrust of this history is that up until *Morgan,* Kentucky courts had consistently held that denial or misallocation of peremptory strikes is per se reversible error. In fact, it is best to view peremptory strikes in the context of strikes for cause. When a juror is not properly struck for cause, without peremptory strikes, a defendant would find himself forced into an unfair trial. The substantial nature of a peremptory strike is thus obvious in this context. The remaining question is whether peremptory strikes are "substantial" when not being exercised to prevent a *known* unfairness. Given that "[w]hen the right of challenge is

lost or impaired, the statutory conditions and terms for setting up an authorized jury are not met; the right to challenge a given number of jurors without showing cause is one of the most important rights of a litigant," *id.* at 137 (Cooper, J., dissenting)—the obvious answer, long supported in our law, is yes.

Thus, the correct inquiry is not whether using a peremptory strike for a juror who should have been excused for cause had a reasonable probability of affecting the verdict (harmless error), but whether the trial court who abused its discretion by not striking that juror for reasonable cause deprived the defendant of a substantial right. Harmless error analysis is simply not appropriate where a substantial right is involved, and is indeed logically best suited to the effect of evidence on a verdict, though some procedural errors may also be reviewed in this light. Here, the defendant did not get the trial he was entitled to get. For these reasons, the holding in *Morgan* must be overturned.

### III.  Pretrial Delay

■ Appellant contends that the trial court erroneously denied his motion to dismiss the charges based on pre-indictment delay. He argues that the Commonwealth violated the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and § 11 of the Kentucky Constitution, by waiting eleven years to indict him. He further argues that he suffered prejudice because his addiction to illegal narcotics prevented him from fully remembering the events of eleven years earlier. Appellant argues that because of his prejudice, the trial court should have granted his motion to dismiss.

For ten years no suspect was identified. However, in 2003, the police submitted

cigarette butts seized at the crime scene for DNA testing. One butt provided a sufficient DNA sample from which a DNA profile was obtained that met the criteria for submission to the Combined DNA Indexing System (CODIS), a national DNA database. In March 2004, the DNA profile from the cigarette butt was uploaded into CODIS. The profile matched that of a prisoner incarcerated in Colorado, the Appellant.

The Commonwealth lodged a detainer for Appellant and upon his return to Kentucky a blood sample was taken which matched the profile obtained from the cigarette butt. Appellant was then indicted for Rape in the First Degree, KRS § 510.040, Sodomy in the First Degree, KRS § 510.070, and Burglary in the First Degree. At trial the jury found the Appellant guilty of Burglary in the First Degree, not guilty of Sodomy in the First Degree, and it was unable to reach a verdict on Rape in the First Degree. The trial court dismissed the rape charge without prejudice.

The United States Supreme Court has held that the Sixth Amendment is inapplicable to pre-indictment delay. *United States v. Marion*, 404 U.S. 307, 324 92 S.Ct. 455, 465–66, 30 L.Ed.2d 468 (1971). However, the Court noted that while the principal protections against excessive pre-indictment delay are statutes of limitations, the Due Process Clause does provide limited protection. *Id.* In *United States v. Lovasco*, 431 U.S. 783, 796, 97 S.Ct. 2044, 2052, 52 L.Ed.2d 752 (1977), the Supreme Court clarified that due process only requires dismissal because of pre-indictment delay when the defendant suffers actual prejudice and the delay is motivated by a desire to gain an advantage over the defendant. Prescient of situations similar to the present case, the Supreme Court noted that "to prosecute a defendant following

investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lack of time." *Id.*

Appellant argues that because Kentucky does not have a statute of limitations for felonies, KRS § 500.050(1), this Court should apply a test more favorable to the accused, the test enunciated in *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). However, *Doggett* only applies when analyzing whether the government violates the Sixth Amendment because of excessive delay between the time of the indictment and the time of trial. *Id.* at 651, 112 S.Ct. at 2690. Moreover, this Court has already considered and rejected the Appellant's argument in *Kirk v. Commonwealth*, 6 S.W.3d 823, 826 (Ky.1999), where we held that even though Kentucky does not have a statute of limitations for felonies, a due process violation for pre-indictment delay will only result "where there is both substantial prejudice and an intentional delay to gain advantage." Unless Appellant can satisfy *both* requirements, his argument fails.

It is unnecessary to determine whether the Appellant satisfies the prejudice requirement because he has put forward no evidence that the passage of eleven years between the crime and his indictment was an intentional delay to gain advantage. Rather, it appears that any delay was merely an "investigative delay." DNA technology changed vastly from the time the Appellant committed the crime in 1993 to the time of the CODIS match in 2004. Although the Appellant asserts that Kentucky began testing DNA in 1990, this in no way implies or proves that the delay was anything more than an "investigative delay," resulting in no constitutional violation. Therefore, the trial court was cor-

rect in denying the Appellant's motion to dismiss for pre-indictment delay.

## IV. Conclusion

Consequently, the judgment in this case is reversed and remanded for a new trial, and *Morgan* is hereby overruled. While a party can reasonably expect to be given all the rights granted to him by state law or rule, he has a certain right to a trial that is fair in its entirety. This Court has granted the use of peremptory strikes to a party and made it mandatory for trial courts to excuse biased jurors for cause when a reasonable person would view the juror as biased. Not removing a biased juror from the venire, and thereby forcing a defendant to forfeit a peremptory strike, makes the defendant take on the duty of the court and prevents him from getting the jury he had a right to choose. This violates a substantial right accorded great weight in our legal history, and can never be harmless error. Further, the pre-indictment delay was investigative delay, and thus not error.

LAMBERT, C.J.; ABRAMSON, CUNNINGHAM, MINTON and SCHRODER, JJ., concur.

SCOTT, J., concurs in part and dissents in part by separate opinion.

SCOTT, Justice, concurring and dissenting.

While I concur with the majority opinion on the questions of pre-indictment delay, I must respectfully dissent from the majority opinion reversing *Morgan v. Commonwealth*, 189 S.W.3d 99 (Ky.2006), and reinstating *Thomas v. Commonwealth*, 864 S.W.2d 252 (Ky.1993). *Thomas* is simply bad law, and harkens back to a time when appellate bodies were considered "citadels of technicality." *Kotteakos v. United States*, 328 U.S. 750, 759, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Here's why.

### The Resurrection of *Thomas*

Resurrecting the rule in *Thomas, supra,* the majority reverses Appellant's conviction because the trial court denied Appellant's challenge to Juror 138 for cause, *even though juror 138 never sat on the jury that convicted Appellant.* All because Appellant used one of his nine (9) peremptory challenges allotted to him for the very purpose for which they were granted—to strike a juror he felt would not be sympathetic to his cause. RCr 9.40. *"To be clear, one should not believe that this is a case where an obviously biased juror sat on the trial jury."* *Morgan,* 189 S.W.3d at 105.

As in *Thomas,* the majority re-adopts the doctrine that the use of Appellant's peremptory challenge in this circumstance resulted in a violation of a "substantial right" which made, "the trial unfair," requiring reversal. A square collision with RCr 9.24, the harmless error rule, which commands that,

> [n]o error ... in anything done or omitted by the court ... is ground[s] for ... setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment ... unless it appears to the court that the denial of such relief would be inconsistent with substantial justice.

When announced in 1993, *Thomas* made a quantum leap *from Rigsby v. Commonwealth,* 495 S.W.2d 795, 799 (Ky.1973) ("[t]here has been no showing that use of the eleven peremptories to dispose of the suspect jurors resulted in a subsequent inability to challenge additional unacceptable veniremen") and *Marsch v. Commonwealth,* 743 S.W.2d 830, 831 (Ky.1987) ("[t]wo jurors who were challenged for cause actually served upon the jury because appellant's peremptories had been

exhausted and he could not excuse them"), to overrule *Turpin v. Commonwealth,* 780 S.W.2d 619 (Ky.1989) and *Dunbar v. Commonwealth,* 809 S.W.2d 852, 854 (Ky.1991) ("[t]hey have failed to demonstrate that in fact any person who sat on the jury was incompetent and should have been stricken for cause"). Pre-*Thomas,* even Justice Leibson, acknowledged the rule of *Rigsby* and *Marsch:*

> Without forewarning to the trial bar, we have quietly and subtly shifted this rule to a new one stating that no prejudice is presumed when a party is forced to use peremptory challenges to excuse jurors who should have been excused for cause *unless* that party not only then exhausts all peremptory challenges available to him, but also requests additional challenges on grounds that he was unfairly denied challenges for cause, or, at the least, before having a right to complain a party must state on the record additional persons against whom he would have exercised peremptory challenges had such challenges been available to him.

*Turpin,* 780 S.W.2d at 626 (Liebson, J., dissenting). *Thomas, supra,* changed the rule in *Rigsby* and Marsch, while *Morgan, supra,* did not in any way challenge, change, or disparage, *Rigsby* or *Marsch,* only *Thomas.* In fact, in *Morgan,* there was no proof, or allegations that there was *any other juror that* the defense *needed to strike* with the one peremptory challenge at issue.

### Peremptory Challenges

Under Federal Constitutional Law, peremptory challenges are "auxiliary" and not of constitutional dimension. *United States v. Martinez–Salazar,* 528 U.S. 304, 311,

120 S.Ct. 774, 145 L.Ed.2d 792 (2000), citing *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).[1] Rather, they are a means to achieve the constitutionally required end of an impartial jury. *Id.* at 307, 120 S.Ct. 774. By *Thomas,* however, Kentucky ... elevated the peremptory challenge to that of a "substantial right" requiring the highest degree of protection; even though our history acknowledges we can freely add to them, subtract from them, or take them away. *Stopher v. Commonwealth,* 57 S.W.3d 787, (Ky.2001) (Keller, J., dissenting).

> Historically, the number of peremptory challenges has fluctuated for both the defense and the Commonwealth. In 1877, the defense was allowed twenty (20) peremptory challenges. The number was reduced to fifteen (15) in 1893; and to eight (8) in 1978. All during these periods, the Commonwealth was allowed only five (5) peremptory challenges. In 1994, RCr 9.40 was amended to allow both the defense and the Commonwealth an equal number, eight (8) peremptory challenges each. Thus, if the peremptory challenge was intended to be a "substantial right" afforded to the defendant, as the majority again holds, I suspect amendments as drastic as those made to RCr. 9.40 would never have been allowed to stand.

*Morgan,* 189 S.W.3d at 105.

Black's Law Dictionary defines a "substantial right" as one which is essential and that potentially affects the outcome of a lawsuit and is capable of legal enforcement and protection, as distinguished from a mere technical or procedural right.

---

1. For state trends on this issue since *Martinez–Salazar,* see Justice Roach's concurring opinion in *Morgan v. Commonwealth,* 189 S.W.3d 99, 119, 120 (Ky.2006). Contrary to the majority's assertion, Justice Roach concurred in result in *Morgan, only* because he was unwilling to concede that the reversal in *Thomas* was *a correct result,* albeit for different reasons, i.e., the change of venue issue as discussed in *Morgan,* 189 S.W.3d at 106.

Black's Law Dictionary 1324 (7th ed.1999). Conversely, a procedural right is derived from a legal or administrative procedure, a right that helps in the protection or enforcement of a substantial right. *Id.* at 1323. This case illustrates the quintessential exercise of the peremptory challenge. *Morgan,* 189 S.W.3d at 105. Appellant's peremptory challenge allowed him to receive a fair and impartial jury; yet its use ... is now [the] basis for reversing the verdict of that fair and impartial jury. *Id.* As Justice Keller pointed out in his dissenting opinion in *Stopher v. Commonwealth,* 57 S.W.3d 787 (Ky.2001), "bestowing a substantial right upon the exercise of a peremptory challenge serves one function and one function only—it manufactures reversible error in cases where the case has been decided by a fair and impartial jury." *Id.* at 814. (Keller, J., dissenting).

With *Thomas, supra,* now resurrected, we again must find error where no error exists. And again, *Thomas* upsets jury verdicts rendered by a fair and impartial jury only because the Fifth and Sixth Amendment safeguards worked.

Ours is an adversarial system where all parties work together to insure a fair and impartial jury. When that is done and a fair and impartial jury is seated, we should not disturb the verdict for that reason. As Justice Wintersheimer's dissent in *Thomas,* pointed out, "The mere fact that the defendant exercised all his peremptory challenges does not provide a sound basis for asserting that the process relating to challenges for cause automatically deprived him of a proper number of peremptory challenges." *Thomas,* 864 S.W.2d at 265 (Wintersheimer, J., dissenting). *There must be more* as required by *Rigsby* and *Marsch.* And as Justice Graves noted, "I am reminded, 'the right to a jury trial free of discriminatory taint is constitutionally

protected—the right to use peremptory challenges is not.'" *Morgan,* 189 S.W.3d at 116 (Graves, J., concurring). And as noted by Justice Roach, "[i]s this really the kind of error, and really the kind of 'right,' that justifies reversing otherwise perfectly valid convictions returned by perfectly impartial jurors? The answer must be no. This error is not constitutional, is not structural and is harmless by any measure of that inquiry." *Id.* at 221 (Roach, J., concurring).

Here the Appellant was found guilty of one count of burglary in the first degree. He was also found to be a second degree persistent felony offender. As such, he was sentenced to a term of twenty years imprisonment, enhanced to thirty-five years for being a persistent felony offender. Evidence at trial established that the DNA profile from a cigarette butt found at the scene later matched the DNA profile of a prisoner in the Colorado penitentiary on all thirteen (13) points! That prisoner was Appellant.

The odds of another person having the same DNA profile as Appellant, is one in six quadrillion, *roughly one million times the population of earth.* Thus, "[t]his is a case where the evidence of the defendant's guilt [is] overwhelming. To retry this case under the sole dictates of *Thomas* would be absurd." *Morgan,* 189 S.W.3d at 107. This is why the Court tried to leave *Thomas*—and we did—for awhile.

Thus, I strongly dissent in the resurrection of a doctrine which manufactures error where none should exist.