Ricky KING, a/k/a Ricky Neal, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2007–SC–000713–MR.

Supreme Court of Kentucky.

Jan. 22, 2009.

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, James Chesnut Maxson, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice
VENTERS.

Appellant, Ricky King (a/k/a Ricky Neal), was convicted by a McCreary Circuit Court jury of complicity to murder and first-degree robbery. For these crimes, Appellant accepted a negotiated sentence of thirty-five years imprisonment. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110.

Appellant asserts six arguments on his appeal: 1) that he should have been granted a separate trial from his co-defendant Kim Dalton; 2) that the trial court denied his right of confrontation by limiting his impeachment of a key witness; 3) that the introduction of other crimes evidence was prejudicial to him; 4) that the Commonwealth improperly cross-examined his co-defendant causing him prejudice; 5) that the introduction into evidence of his co-defendant guilty pleas prejudiced him; and 6) that the trial court improperly denied his jury challenges for cause. For the foregoing reasons, we now affirm Appellant's conviction and sentence.

On the night of December 15, 2006, Morris King[1], a sixty-five year-old resident of Burnside, Kentucky, went to a bar he regularly frequented in Winfield, Tennessee. There he ran into Appellant, Kim Dalton, Rocky King, Danny Bryant, and Harold King.[2] The evidence presented at trial indicated that this group of individuals, believing Morris was rich, devised a plan to rob him. Several bar patrons testified that they were worried about Morris's safety that night because members of the group openly discussed robbing him.

As Morris was leaving the bar, Appellant tried to convince Morris to let him drive his car. This plan was foiled by one of the bar patrons. The group including Appellant then left the bar just ahead of Morris and traveled north on U.S. Highway 27. Testimony at trial indicated that once the group had driven a few miles, Appellant requested that he be allowed to drive the car. This request was granted and Appellant took over driving. Appellant then pulled off the road and waited for Morris to drive by.

Several members of the group testified that once Morris's truck drove past, Appellant pulled in behind him and began to honk his horn and flash his lights. Morris pulled over to the side of the road. Appellant and Rocky spoke with Morris and convinced him to let them into his truck. Appellant instructed Rocky to drive the three of them to a remote part of McCreary County. The rest of the group followed in their car. As they drove, Morris pulled a gun on Appellant and Rocky.

Once they got to the final destination, Bryant got into the truck as Appellant got out to talk with the rest of the group. Morris, apparently realizing that the group intended to harm him, fired a warning shot. Bryant and Morris struggled for the gun. Appellant then jumped back in the truck and wrestled the gun away from Morris. Rocky testified at trial that Appellant fired one shot at Morris. This shot hit Morris in the neck. Rocky then testified that he took the gun from Appellant and five or six minutes later shot Morris three or four more times. One of the shots killed Morris. After the shooting, Dalton took Morris's wallet which contained a hundred dollar bill. The group decided to split the money evenly amongst themselves.

After staying the night at Appellant's mother's house, the group conspired to conceal evidence of the crime. Morris's wallet was burned and the gun was thrown in a creek. However, despite their best efforts, a search of Morris's body and truck turned up substantial forensic evidence linking them to the crime.

After a short investigation, Appellant, Dalton, Bryant, Rocky, and Harold were indicted for the murder and first-degree robbery of Morris. Bryant, Rocky, and Harold all accepted plea deals in exchange for testifying at Appellant and Dalton's joint trial. The jury found both Appellant and Dalton guilty of first-degree robbery and complicity to murder.

## I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR A SEPARATE TRIAL.

■ Appellant's first allegation of error is that the trial court abused its discretion by denying his and Dalton's multiple motions for a separate trial. Appellant argues that separate trials should have been

---

1. Morris King is apparently of no relation to any of the accused.

2. Rocky King is Appellant's brother and Harold King is Appellant's father. Danny Bryant is Appellant's cousin.

granted because his and Dalton's defenses were antagonistic. In particular Appellant complains that he had to jointly exercise his peremptory strikes with Dalton despite having different defenses, that Dalton was the source of Appellant's other crimes evidence that was introduced at trial, that Dalton's counsel helped prosecute Appellant, and that the jury gave both of them identical sentences.

■ RCr 9.16 allows the trial court to order separate trials if it appears that a defendant will be prejudiced by the joinder of trials. However, the decision whether to grant a separate trial is within the sound discretion of the trial court. *Rachel v. Commonwealth,* 523 S.W.2d 395, 399 (Ky. 1975). We have never held as a matter of law that severance is required if the co-defendants have antagonistic defenses. *Id.* There must be some other factor present before we will reverse the trial judge's decision not to grant separate trials. *Id.* at 399–400.

The trial court did not abuse its discretion in denying Appellant's motion for a joint trial. While it could be argued that Appellant and Dalton's defenses were antagonistic, no other factor indicating prejudice is present. The same evidence that was presented in the joint trial could have been admitted in a separate trial against Appellant. *See Commonwealth v. Rogers,* 698 S.W.2d 839, 841 (Ky.1985) (holding that the trial court did not abuse its discretion in failing to grant defendant's motion for separate trial, since co-defendant would have given same testimony in two separate trials, and none of material testimony would have been inadmissible against defendant had he been tried separately). Appellant and Dalton's sharing of peremptory strikes is mandated by RCr 9.40 in joint trials. Additionally, Appellant accepted his sentence in a deal with the Commonwealth and thus no jury bias can

be inferred. Accordingly, we cannot find that the trial court abused its discretion in denying the motion for a separate trial and there is no error here.

## II. THE TRIAL COURT COMMITTED NO ERROR IN LIMITING THE CROSS–EXAMINATION OF BRYANT

■ Appellant next argues that the trial court improperly limited his ability to impeach Bryant's testimony. Prior to trial, Bryant accepted a deal to plead guilty to facilitation to murder and facilitation to robbery and become a witness for the Commonwealth. However, Bryant had not been sentenced for his crimes by the time he testified at Appellant's trial. Dalton attempted to impeach Bryant on this fact. The implication was that Bryant's testimony was tainted in favor of the Commonwealth in an attempt to receive a lower sentence for his crimes. The Commonwealth objected to this impeachment and the trial court sustained that objection. Appellant never attempted to impeach Bryant on the fact that he had not been sentenced. However, Appellant and Dalton both extensively impeached Bryant on his plea agreement in general.

■ Appellant did not properly preserve this alleged error for appellate review. Since Appellant never attempted to impeach Bryant he thus did not let the trial court know of his preferred outcome. *See* RCr 9.22. Appellant cannot use his co-defendant's actions to preserve error he claims. *See generally Brown v. Commonwealth,* 780 S.W.2d 627, 629 (Ky.1989) (holding that an objection made by co-defendant does not preserve the error for the defendant unless the co-defendant makes it clear that the objection is for both parties or the defendant makes his own objection). Thus, we will review this

allegation under our palpable error standard. RCr 10.26.

■ "Whenever limitations on the right of cross-examination are analyzed, it should be remembered that the right implicated is a fundamental constitutional right and that such limitations should be cautiously applied." *Commonwealth v. Maddox,* 955 S.W.2d 718, 720 (Ky.1997). "Witness credibility is always at issue and relevant evidence which affects credibility should not be excluded." *Id.* at 721. However, "defendants cannot run roughshod [over witnesses], doing precisely as they please, simply because cross-examination is underway. So long as a reasonably complete picture of the witness's veracity, bias, and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries." *Id.* quoting *United States v. Boylan,* 898 F.2d 230, 254 (1st Cir.1990). Here, the trial record indicates that Appellant and Dalton repeatedly questioned Bryant about his plea agreement. In fact combined, Appellant and Dalton cross-examined Bryant for nearly twenty minutes. The trial judge reasonably limited Dalton's impeachment of Bryant after he believed the subject had been thoroughly covered. Appellant and Dalton certainly were able to develop a "reasonably complete picture" of Bryant's potential motivations to be untruthful. There is no error, much less palpable error here.

## III. THE INTRODUCTION OF APPELLANT'S BAD ACTS EVIDENCE WAS HARMLESS ERROR

■ Appellant next argues that the trial court impermissibly allowed the admission of his prior bad acts into evidence. In particular, Appellant argues that Dalton's testimony informed the jury that he had been in jail for domestic violence against his wife and that there had been an emergency protective order taken out against him. Dalton also testified that Appellant was considered to be a "really bad" person by a Kentucky State Police detective. Appellant objected to Dalton's initial statements regarding his alleged domestic violence, but did not object to her statements regarding the EPO or that he was a "really bad" person.

■ KRE 404 governs the admission of prior bad acts evidence into trial. We have adopted a three-part inquiry to help determine if the evidence of prior bad acts evidence is admissible. *Bell v. Commonwealth,* 875 S.W.2d 882, 889 (Ky.1994); *see also* Lawson, *The Kentucky Evidence Law Handbook,* 4th ed., § 2.25(3) (2003). We must determine if the evidence is relevant, probative, and not overly prejudicial. *Bell,* 875 S.W.2d at 889.

Here it is obvious that the bad acts evidence Dalton testified about is irrelevant to this trial. Whether Appellant abused his wife, had an emergency protective order against him, or was considered a "bad person" by the police adds nothing probative towards determining whether Appellant helped rob and murder Morris. Thus, the admission of this evidence was error. Had Appellant requested a jury admonishment, the trial judge should have provided it, and that would have cured any error. *See Combs v. Commonwealth,* 198 S.W.3d 574, 581 (Ky.2006) (stating a jury is presumed to follow any admonishment given by the trial judge).

■ However, while the admission of this evidence was error, it was harmless. Dalton's statements were spontaneous and not elicited by the Commonwealth. The Commonwealth never tried to use her statements to prove that Appellant acted in conformity with them. Additionally, they were brief, isolated comments. Considering the overwhelming evidence

against Appellant in this case, we cannot say that Dalton's isolated statements affected the trial's outcome. Any error here is harmless.

## IV. DALTON'S CROSS–EXAMINATION WAS APPROPRIATE

Appellant's next allegation of error is that the Commonwealth asked co-defendant Dalton inappropriate questions during cross-examination. Appellant argues that these questions caused her to impermissibly bolster the credibility of witnesses Rocky and Bryant. *See Moss v. Commonwealth*, 949 S.W.2d 579 (Ky.1997) (holding that it is generally impermissible to have one witness comment on the credibility of other witnesses). These questions included:

Commonwealth: Now Danny Bryant and Rocky King have testified that Ricky was the last one to get in the car, so you agree with them, don't you?

Now, that's what Rocky and Ricky testified to, or what Danny testified to, excuse me, Danny testified to, and he was correct, wasn't he? ... And all through this Danny is testifying ...

That's what Rocky said. That's what Danny said. That's what you said. You all agree on that ... so from the time you got out of the bar down at the Wooden Nickel at least up to the time everybody changed cars and changed drivers, you and Rocky, or you, Rocky and Danny are one-hundred percent in agreement, aren't you?

That's exactly what Danny said, almost identical to what he said.

[Objection from Appellant and Dalton. Court overrules objection]

You agree with what Danny Bryant said, don't you. You heard him testify ... That's exactly what Rocky said, wasn't it.

[Appellant objects and the court overrules him]

You agree with him, don't you?

[Appellant objects and asks for a mistrial here. The Court denies the request]

Now you heard the people at the bar testify ... they had no reason to lie about you, that you know of, did they?

So, when Danny Bryant stated that he got his share in beer, you're saying that's not truth?

And Rocky King said that you got the money and you gave everybody their share. He was not telling the truth?

Now, Ms. Dalton, we've heard [Appellant] testify, who confessed to pretty much what you said about the shooting. You've heard Danny Bryant confess to his role and what he observed in the shooting. In their testimony, they gave very damaging testimony against close relatives, a brother and cousins. You've confessed, to an extent, the truthfulness of what these people said. You dispute, I'm going to ask you if this is your understanding, you dispute anything they say that makes you responsible for this, don't you? ... Even though everything else they said, and they said it against their own relatives, you agree is true.

You dispute people at the bar, their testimony as to what you did down at the bar ... You dispute your own roommate as to that note and what she saw at the bar, don't you ... So, in conclusion, Ms. Dalton, everybody is lying about what you did that night.

From the record it appears that the questions the Commonwealth asked Dalton were an attempt to impeach her testimony. The Commonwealth wanted to show the jury that Dalton testified consistently with the other witnesses' testimony to the extent that it did not incriminate her, but

that she vehemently disagreed with any of the testimony which incriminated her. Thus, throughout the cross-examination, the Commonwealth wanted to show that Dalton testified in a self-serving manner.

Appellant has cited to *Moss, supra,* for the proposition that any questioning which causes a witness to comment on the credibility of another witness is error. However, this case is distinguishable from *Moss.* In *Moss,* the witness being forced to comment was the defendant himself. *Id.* at 583. The prosecutor "badgered" the defendant into calling a well-respected police officer a liar. The Court found that this line of questioning could "potentially undermine his entire testimony." *Id.* In this matter, the Commonwealth's questions attempted to impeach Dalton's testimony. The goal was to show the likelihood that Dalton was lying on the witness stand. Any implications that could be drawn that Dalton was lying would affect her and not Appellant. Additionally, the fact that Dalton's testimony was substantially similar to Rocky and Bryant's testimony alone bolstered their statements. There is no error here.

## V. THE ADMISSION OF EVIDENCE OF THE OTHER CO–DEFENDANTS' GUILTY PLEAS WAS NOT PALPABLE ERROR

Appellant next argues that the admission into evidence of the guilty pleas of three of the five codefendants in the case prejudiced Appellant's trial. Appellant did not object to this error so we review it under our palpable error standard. RCr 10.26. During opening arguments, the Commonwealth discussed each of the five defendants individually and told the jury whether that individual had pled guilty. The Commonwealth also elicited information from several of the defendants about their plea deals during their direct

testimony. Appellant argues that the Commonwealth's opening statement and questioning regarding the guilty pleas is reversible error. *See Parido v. Commonwealth,* 547 S.W.2d 125, 126–127 (Ky.1977).

Ordinarily it is "improper for the Commonwealth to show during its case-in-chief that a co-indictee has already been convicted under the indictment." *St. Clair v. Commonwealth,* 140 S.W.3d 510, 544 (Ky.2004). However, if it is apparent from the record that the defendant did not object to the introduction of this evidence and that the defendant tried to use that information as part of his trial strategy, no reversible error occurred. *Id.* In this matter, Appellant clearly impeached the testimony of several of his co-defendants by using their plea agreements against them and never objected to the Commonwealth's introduction of the plea agreements into evidence. Appellant mentioned the plea agreements in his opening statement. During the cross-examinations of Appellant's brother and cousin, Appellant brought up the plea agreements to impeach their credibility. In fact on appeal, Appellant complains that he was not able to impeach his co-defendants enough about their plea agreements. Clearly the use of the plea agreements was part of Appellant's trial strategy. There is no error here.

## VI. PEREMPTORY STRIKES

Appellant's final argument is that the trial court abused its discretion in failing to strike two jurors, Juror 12 and Juror 32, for cause. Appellant argues that since he was ultimately forced to use his peremptory strikes to remove those jurors, he is entitled to a new trial. *See Shane v. Commonwealth,* 243 S.W.3d 336 (Ky.2008).

Juror 12 stated during *voir dire* that he read about the case in the newspaper and that he usually took "for granted" to be

true what he read in the paper. Juror 12 stated that when reading the newspaper article on this case he thought the police had caught those who killed and robbed Morris, but he stated that he had not really formed an opinion as to who was guilty. He stated that he did not think what he read would affect his ability to be fair. Appellant's request to strike for cause Juror 12 was denied.

Juror 32 stated during *voir dire* that she was the wife of a Kentucky State Police trooper. She stated she was good friends with the lead detective in the case, Detective Correll. Her husband and Detective Correll worked together for seven to eight years. She estimated that she had been to Detective Correll's house around ten times. She stated that she had never discussed this case with Detective Correll or her husband and that she did not think her relationship with them would affect her ability to be fair. Dalton's request to strike Juror 32 for cause was denied. Appellant never joined that request or made a request of his own.

Appellant and Dalton were granted twelve peremptory requests according to RCr 9.40. Two of their peremptory strikes were used to eliminate Jurors 12 and 32 from the jury pool. Appellant and Dalton then filed a joint strike sheet in open court stating that if they had not used their two peremptory strikes on Jurors 12 and 32, they would have used them to strike Juror 17 and Juror 41. Neither, Juror 17 or 41 sat on the final jury. The Commonwealth used one of their peremptory strikes to eliminate Juror 41. Juror 17 initially sat on the jury, but due to the trial's interference with his work schedule, was ultimately excused from the jury by the trial judge.

■ A defendant may challenge a juror for cause, "[w]hen there is a reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence." RCr 9.36(1). "A determination as to whether to exclude a juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination." *Pendleton v. Commonwealth*, 83 S.W.3d 522, 527 (Ky.2002). The true test of whether a juror should be stricken for cause is whether ". . . the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict." *Thompson v. Commonwealth*, 147 S.W.3d 22, 51 (Ky. 2004) quoting *Mabe v. Commonwealth*, 884 S.W.2d 668, 671 (Ky.1994). In this matter, the trial judge did not abuse his discretion to deny striking Juror 12 for cause, but did abuse his discretion by not striking Juror 32.

■ While Juror 12 admitted to reading about this case in the newspaper, he clearly indicated that this would not affect his ability to render a fair and impartial opinion. Juror 12 made it clear that he did not exactly remember what he had read in the paper and that he could set aside any preconceived notions. Juror 12 displayed no preconceived bias which would warrant his disqualification. The trial judge's failure to strike for cause Juror 32, however, is more troubling.

■ Juror 32 admitted to being married to a Kentucky State Police trooper. Such a relationship alone does not indicate that the juror will be biased against the defendant and should not lead the trial judge to strike that juror for cause. However, Juror 32 and her husband were personal friends with Detective Correll, who ultimately testified at Appellant's trial. Juror 32's relationship with Detective Correll is too close to one of the Common-

wealth's main witnesses and infers that she may have been biased in favor of him as a witness. Thus, Juror 32 should have been stricken for cause by the trial judge.

While we find that Juror 32 should have been stricken for cause, we cannot find that Appellant is entitled to a new trial. This case presents one of the rare exceptions to our decision in *Shane, supra.* In *Shane,* we held that it is reversible error if a trial court improperly fails to strike a juror for cause and the defendant had to use all of his peremptory strikes to remove that juror from the jury panel. *Id.* at 341. This holding is predicated on the idea that peremptory strikes are a substantial right given to the defendant. *Id.* Thus, if the defendant had to use all of his peremptory strikes to remove a juror that should have been stricken for cause, a juror that he otherwise would have stricken would have been impaneled on the jury. *Id.* Because of this, the jury could never be completely fair to the defendant since he was not able to effectively exercise his right to choose jurors. *Id.*

The logic of *Shane* holds true if we do not know if the juror the defendant would have used his peremptory strike on sat on the jury. However, this case presents a different scenario. Here we know with certainty the jurors Appellant would have used his peremptory strikes on if he did not have to strike Jurors 12 and 32. Those two jurors, 17 and 41, did not sit on the final jury. Therefore, despite not being able to use his peremptory strikes the way he wanted, Appellant received the jury he wanted. Thus, the trial judge's error in failing to strike Juror 32 was effectively cured and Appellant's substantive rights were ultimately not violated. Since Appellant ultimately received the jury he wanted, there is no logical reason to retry the case. Thus, this case presents a very limited distinction to the rule laid out in *Shane.*

For the above stated reasons, the judgment and sentence of the McCreary Circuit Court is affirmed.

All sitting. All concur.