RENDERED: JANUARY 20, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-00443-T &
2020-SC-00447-MR

KEVEON ROBINSON                                           APPELLANT

               ON APPEAL FROM JEFFERSON CIRCUIT COURT
           HONORABLE JUDITH MCDONALD-BURKMAN, JUDGE
V.                          NO. 17-CR-001776

COMMONWEALTH OF KENTUCKY                        APPELLEE

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING</u>**

A Jefferson Circuit Court jury convicted Keveon Robinson (Robinson), the Appellant, of first-degree sodomy. The trial court sentenced Robinson to twenty years in prison. Robinson appeals to this Court as a matter of right.[1] Robinson argues the trial court erred in failing to remove two jurors for cause during voir dire, pursuant to RCr[2] 9.36(1). Additionally, he argues the trial court committed a reversible error by allowing the Commonwealth to make an improper assertion about Robinson during closing arguments.

For the following reasons, we affirm.

## I. Factual and Procedural Background

---

[1] Ky. Const. §110(2)(b).
[2] Kentucky Rules of Criminal Procedure.

Robinson was accused of sodomizing D.J., an eight-year-old boy, twice between February 1, 2017 and February 22, 2017. He was subsequently indicted and convicted on one count of first-degree sodomy and sentenced to twenty years in prison. Since Robinson's appeals are related to procedural questions arising out of voir dire and closing arguments, and not the underlying facts of the case, it is unnecessary to discuss further the events leading up to his indictment.

During voir dire, Robinson's counsel asked, "Who here would have a problem if Robinson did not testify? And, if he doesn't [testify], that could cause an issue with you?" Juror #2 answered, "I think I would like to hear both sides." Robinson's counsel then asked, "Want to hear both sides—who agrees with that?" Multiple jurors raised their hand.

Juror #8 later asked whether Robinson had to testify. Robinson's counsel responded, "He does not have to, no ma'am." This question and response prompted the following exchange:

Juror #8:    But, I would have to hear both sides.

Defense:    You would have to hear both sides?

Juror #8:    Yes. If he is not willing to get up to the stand, then that's his loss.

Defense:    Who thinks he has to get on the stand?

Juror #2:    I just personally feel like that if I had to defend myself, I would definitely want to tell my story.

Defense:    Oh, I get that.

Juror #2:    And I wouldn't have a problem getting up on the stand to tell my story.

2

The trial court dismissed Juror #8.[3] However, when Robinson moved to strike

Juror #2 for cause, the following exchange between Robinson's counsel and the

trial judge occurred:

> Defense: Judge, I think a quick one off the top of my head is Number 2 . . . She gave me, I'll be honest some good information about why Mr. Robinson may not testify. But then she went and said, I would want him, I would want to hear both sides, and if he were to not do that—I don't think she's going to be fair to the case.

> Judge: She was one of many, and people do want hear both sides. And that's why they said I'd like to. Like and must are two different things and she never said "must.: She said, I would like to defend myself. "I would defend myself" was her quote. Now you can equate that, I mean if you want to, we can all equate that to "I must have the defendant testify." But she never said that.

> Defense: If I could add, she did respond to Juror #8 who pretty equivocally [sic] said, well she's already been struck, and I think her [Juror #2's] comment was in response to Juror #8. Which I think sort of makes it sort of like an "I agree" situation.

> Judge: Well, a lot of them shake their heads and—I get your motion. But, for cause, for absolute cause, the court has to be convinced that this juror cannot be impartial. And, this juror would defend herself if she were charged. She would like to hear from the defendant, like to hear both sides. But, requiring it is a whole different level and I didn't hear it. And, I cannot give you cause strike on that one. That's denied.

Also, during voir dire, the Commonwealth asked the panel who had been

a victim of sexual abuse. Several jurors raised their hands, including Juror #6.

---

[3] During voir dire, Juror #8 also disclosed being a victim of sexual abuse and admitted to being uncomfortable with the subject matter of the trial.

The Commonwealth questioned Juror #6 about her past sexual abuse, specifically asking, "Do you think how [your] case was handled would affect you from being able to sit on this jury and objectively weigh the evidence?" Juror #6 responded, "I don't think so."

Robinson chose not to question Juror #6 about her past trauma. Instead, he asked the following question to the entire panel to see if any potential jurors had an issue with the subject matter:

> You heard the charge that the judge read and [the prosecutor] said this is a sex charge . . . so what you're going to hear in the next day or two is you're going to hear things that nobody wants to hear, nobody likes to hear. So, I'm . . . going to throw out some words that you may hear . . . and if anybody wants me to stop, please [say] so . . . Let's start off here, a word you're probably going to hear is "sodomy." That's obviously the charge. You're going to hear it, maybe on some paperwork you're going to get in a few days. "Anus," "penis," "anal intercourse," "deviate sexual intercourse," these words that we as adults know about. We don't use them in conversations, things like that, but what I'm telling you is . . . you will hear these words.
>
> Does anyone here, and I know a lot a people have raised their hands, and given us a lot of personal information and I thank you all for that, does anyone here that hearing those words or some variation of them is going causes issues in this trial . . . is that going to cause an issue within you that we need to talk about?

No one on the panel of potential jurors raised their hand, including Juror #6.

Robinson later asked the trial judge to strike Juror #6 for cause due to her past sexual abuse. As with the request with Juror #2, the request to strike was denied. The exchange between the judge and Robinson's counsel went as follows:

> Defense:     Judge, I'll go ahead and make a motion on [Juror] #6. She was the one, I think the Commonwealth was asking about with a previous history of sexual abuse.

4

Judge: 35 years ago.

Defense: Yes, you have the exact one I'm thinking of. I think, given again, kind of in relation to [Juror] #8 said this, and [Juror] #6 said this, I think that it would affect her given her—I checked her age, she was teenager at the time with it being 35 years ago. So, I think that as the story come out, as the facts come out, we can't get into that here, I think it would affect her given the fact that I think she only said anything because [Juror #] 8 kind of told her story and put forth stuff she did not want to be here.

Prosecutor: Judge, if I remember correctly, I asked her specifically if that was going to affect her and this case and she said it wasn't.

Judge: She said it wasn't. Yeah, again I don't think anybody is out there smiling or giddy over this. So, I get this. So, I get that. I don't think that I saw that she was—she was nowhere near what [Juror] #8 was from a physical standpoint. But, she never, again, cause is such a difficult burden to meet on a juror. She did not say she could not be fair, or that it would affect her. The fact that we think it would doesn't give that any more steam (or sting). So, I will deny [Juror] #6 for cause.

Finally, during closing arguments, the Commonwealth said, "of course Keveon is not going to admit that he's a pedophile! That he's attracted to young boys!" Robinson immediately objected to the use of the word pedophile. At the bench conference, the Commonwealth argued "[o]ne of the elements [of sodomy] is sexual gratification, so I have to argue that he was getting sexual gratification. The only logic is, if he is doing this is, that he is attracted to a little boy." The trial judge agreed it was an element of the offense and overruled Robinson's objection. She did not admonish the jury. The jury, however, had been admonished several times throughout the trial, including right before

5

closing argument, that nothing the lawyers said was evidence nor could be considered as evidence.

Further facts will be developed as necessary. We now address the merits of the appeal.

## II. Standard of Review

The trial court's refusal to strike Jurors #2 and #6 is reviewed for an abuse of discretion. "Long-standing Kentucky law has held that a trial court's decision on whether to strike a juror for cause must be reviewed as an abuse of discretion." *Morrison v. Commonwealth*, 528 S.W.3d 896, 899 (Ky. 2017) (citations omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (*citing Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

Regarding the Commonwealth's statement during closing argument and the charge of prosecutorial misconduct, "we will reverse for prosecutorial misconduct only if the misconduct was 'flagrant' or if we find all of the following to be true: (1) the proof of guilt is not overwhelming, (2) a contemporaneous objection was made, and (3) the trial court failed to cure the misconduct with a sufficient admonition." *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016) (internal citations omitted).

## III. Analysis

**I.    Trial Court's Denial of Robinson's Motion to Strike Jurors #2 and #6 Was Not an Abuse of Discretion**

6

Robinson claims the trial court used an incorrect, "absolute cause" standard under RCr 9.36(1) in assessing juror qualifications, which resulted in the trial judge failing to strike Jurors #2 and #6 for cause. RCr 9.36(1) states:

> When there is reasonable ground to believe that a prospective juror cannot render a fair or impartial verdict on the evidence, that juror shall be excused and not qualified.

This does not mean "that a prospective juror is removed for cause only if the trial court specifically finds that the juror cannot render a fair and impartial verdict or conform his views to the requirements of the law." *Sturgeon v. Commonwealth*, 521 S.W.3d 189, 194 (Ky. 2017). We explained:

> Rule 9.36(1) requires no such finding; instead, regardless of the juror's *actual* ability to render a fair and impartial verdict, Rule 9.36(1) mandates the removal of a juror if there is merely "a reasonable ground to believe" that he cannot render a fair and impartial verdict. The difference is palpable. Just as "probable cause" or "reasonable grounds" to support an arrest does not require an actual belief in the verity of the charge, "a reasonable ground to believe" a prospective juror cannot be fair and impartial is not tantamount to an actual finding that the juror cannot be fair and impartial. RCr 9.36(1) requires only that there be a "reasonable ground to believe" that he cannot. When a trial court is satisfied that a "reasonable ground" exists, the juror "shall be excused." RCr. 9.36(1).

*Id.* A "doubtful juror" is one "who explicitly admits that he will not or cannot follow the law as contained in the instructions." *Id.* (internal citation omitted). Additionally, "a juror may say he can be fair, but disprove that statement by subsequent comments or demeanor so substantially at odds that it is obvious the judge has abused his discretion in deciding the juror is unbiased." *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2007).

Under *Sturgeon*'s rubric, we examine Robinson's specific claims.

7

## 1.    Juror #2

Robinson contends a reasonable ground to believe Juror #2 could not be fair and impartial exists because she expressed her wish to hear both sides of the case when asked by Robinson's counsel about Robinson not testifying. Robinson ignores the fact multiple prospective jurors agreed with Juror #2 by a show of hands. But Robinson explains Juror #2's bias was further implicated when she responded to Juror #8's declaration that she [Juror #8] had to hear both sides during the trial. While Juror #2 did not indicate her agreement with Juror #8, Robinson suggests speaking at that moment signified agreement.

The Commonwealth disagrees, arguing the trial court weighed the totality of the circumstances surrounding Juror #2's answers and overall demeanor before denying the motion to strike. The trial judge was ultimately convinced Juror #2's desire to hear both sides did not reasonably mean she required both sides testify in order to be impartial. This was especially true after Juror #2 articulated good reasons as to why Robinson might not want to testify at trial. Moreover, Juror #2 spoke after Juror #8 to indicate she [Juror #2] would want to testify at her own hypothetical criminal trial, which signifies neither agreement nor disagreement with Juror #8's comments.

Based on our review of the record and relevant law, we hold the trial court did not abuse its discretion in denying Robinson's motion to strike Juror #2 for cause. RCr 9.36(1) requires there be a "reasonable ground to believe" a juror cannot be fair or impartial "based on the totality of the circumstances, not [in] response to any one question." *Fugett v. Commonwealth*, 250 S.W.3d

8

604, 613 (Ky. 2008). The trial judge's reasoning in the record demonstrates she did consider all the raised instances of potential bias before ruling. While her verbal articulation of the standard was incorrect, her actions and reasoning were in accord with RCr 9.36(1)'s standard as clarified in *Sturgeon.*

**2.  Juror #6**

Robinson argues Juror #6's responses and demeanor indicated a likelihood of bias, stating Juror #6 appeared visibly upset when she disclosed her history of sexual abuse. Robinson further contends Juror #6 failed to assure the court that her history would not affect her ability to be impartial.

The Commonwealth counters, "the mere fact that a person has been the victim of a similar crime is insufficient to mandate a prospective juror be excused for cause." *Bowling v. Commonwealth*, 942 S.W.2d 293, 299 (Ky. 1997) (*overruled on other grounds by McQueen v. Commonwealth*, 339 S.W.3d 441 (Ky. 2011)). Instead, the trial court "must weigh the probability of bias or prejudice based on the entirety of the juror's response and demeanor." *Sturgeon*, 521 S.W.3d at 196 (citations omitted).

The burden of proving bias rests with Robinson as he is the one alleging the issue. *Hunt v. Commonwealth*, 304 S.W.3d 15, 43 (Ky. 2009). Robinson though never questioned Juror #6 about her specific trauma, nor about her possible bias in the matter before the court. Nor did Juror #6 make any express comments about the case matter affecting her one way or the other. Instead, when asked by the Commonwealth if the handling of her own sexual assault case would affect her ability to be impartial, she simply responded, "I

9

don't think so." The trial court did not find this response, her history, or her demeanor enough to indicate a likelihood of bias requiring her to be struck for cause.

Upon review of the record, we hold the trial court did not abuse its discretion when it denied Robinson's motion to strike Juror #6 for cause. Once again, the trial judge's reasoning shows she considered the totality of the circumstances carefully before finding no reasonable ground for dismissal under RCr 9.36(1). Accordingly, in denying Robinson's motions to strike Jurors #2 and #6 for cause, the trial court's decisions were not an abuse of discretion.

## II. Prosecutor's Statements During Closing Arguments Were Not Reversible Error

"Prosecutorial misconduct is 'a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment.'" *Commonwealth v. McGorman*, 489 S.W.3d 731, 741-42 (Ky. 2016) (quoting *Noakes v. Commonwealth*, 354 S.W.3d 116, 117 (Ky. 2011)). The misconduct can occur in a variety of forms, including improper closing argument. *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016) (citing *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010)). When considering prosecutorial misconduct, the Court must view the allegation in the context of the overall fairness of the trial. *McGorman*, 489 S.W.3d at 742. In order for reversal to be justified, the Commonwealth's misconduct must be so serious as to render the entire trial fundamentally unfair. *Soto v. Commonwealth*, 139 S.W.3d 827, 873 (Ky. 2004) (internal

quotations and citations omitted). "If the misconduct is objected to, we will reverse on that ground if proof of the defendant's guilt was not such as to render the misconduct harmless, and if the trial court failed to cure the misconduct with a sufficient admonition to the jury." *Duncan*, 322 S.W.3d at 87 (citing *Barnes v. Commonwealth*, 91 S.W.3d 564 (Ky. 2002)).

Regarding an allegation of prosecutorial misconduct in a closing argument, the Court must consider the argument "as a whole" while remembering that counsel is granted wide latitude during closing argument. *Brewer v. Commonwealth*, 206 S.W.3d 343, 350 (Ky. 2006) (quoting *Young v. Commonwealth*, 25 S.W.3d 66, 74-75 (Ky. 2000)). It well-established that counsel may comment on the evidence and make all legitimate inferences that can be reasonably drawn from it. *Padgett v. Commonwealth*, 312 S.W.3d 336, 350 (Ky. 2010).

On the other hand, a prosecutor is not permitted to vilify the accused. *Timmons v. Commonwealth*, 555 S.W.2d 234, 241 (Ky. 1977). There is a fine line, however, between vilification and "[t]he legitimate scope of the argument to the jury [which] is affected to some extent by the nature of the evidence[,]" thus, "[o]utrageous conduct warrants stronger words than might otherwise be justified." *Id.* As such, this Court has tolerated severe characterizations of defendants previously. *See Murphy v. Commonwealth*, 509 S.W.3d 34, 53 (Ky. 2017) (referring to the defendant as a "monster"); *Dean v. Commonwealth*, 844 S.W.2d 417, 421 (Ky. 1992) (referring to the defendants as "crazed animals");

11

*Ferguson v. Commonwealth*, 401 S.W.2d 225, 228 (Ky. 1965) (referring to the defendant as a "beast").

After careful consideration, we conclude it is error for the Commonwealth to call the accused a "pedophile," even when the evidence thoroughly establishes the fact. The dispositive factor is the word pedophile goes to the ultimate conduct at issue in trial; whereas to call a defendant a monster or crazed animal, when justified, is a general, descriptive term. Justice Cunningham once observed, "the sexual assault upon a child is a horrible crime. The charge itself almost carries inherent prejudice. There is tremendous societal pressure for juries to convict." *Alford v. Commonwealth*, 338 S.W.3d 240, 251 (Ky. 2011) (Cunningham, J., concurring). Therefore, we emphasize that prosecutors may not use the highly charged word "pedophile", and thereby inflame the passions of the jury. As the Romans said, *principiis obsta (et respice finem)*—resist the beginnings (and consider the ends). We have done so, and hold the Commonwealth committed error by calling Robinson a pedophile in its closing argument.

Nonetheless, we will not reverse a conviction even for prosecutorial misconduct if, in the whole context, the evidence of guilt is overwhelming, rendering the error harmless. *Duncan*, 322 S.W.3d at 87. The evidence in this case overwhelmingly demonstrates Robinson sodomized D.J., a minor. D.J. testified to two acts of sodomy, and he reported the rapes to his grandmother the day after the second occurred and he was no longer in the same house as Robinson. The grandmother confronted Robinson in person later that day, and

12

Robinson did not deny the abuse but instead blamed D.J. as the instigator. A few days later, now working with law enforcement, the grandmother spoke with Robinson via phone. Once again, Robinson did not deny the sexual encounters but blamed the victim, including admitting to anal penetration. Finally, in a non-custodial interview with a detective, Robinson admitted for a third time that he had sexual contact—including anal penetration—with D.J., but maintained it was D.J. who took the initiative in the sexual encounter. Faced with three separate confessions on three different occasions, we are satisfied the evidence is overwhelming of Robinson's guilt. Accordingly, the singular use of the word pedophile in closing arguments was harmless and does not require reversal.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the trial court did not abuse its discretion when the trial judge refused to strike Jurors #2 and #6. We also affirm the trial court did not commit reversible error when it overruled Robinson's objection to the Commonwealth's characterization of Robinson during its closing argument.

All sitting. All concur.

COUNSEL FOR APPELLANT, KEVEON ROBINSON:

Yvette De La Guardia
Assistant Appellate Defender
Louisville Metro Public Defender's Office


COUNSEL FOR APPELLEE, COMMONWEALTH OF KENTUCKY

Daniel J. Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General