# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 30, 2020
NOT TO BE PUBLISHED

## Supreme Court of Kentucky

2019-SC-000159-MR

DOMINIC HODGE                                                         APPELLANT

V.

ON APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE KEN HOWARD, JUDGE
NO. 18-CR-00395

COMMONWEALTH OF KENTUCKY                                    APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Dominic Eugene Hodge was convicted of first-degree robbery, first-degree fleeing or evading, tampering with physical evidence, felon in possession of a handgun, and being a first-degree persistent felony offender. He was sentenced to forty (40) years in prison. This appeal followed as a matter of right. *See* KY. CONST. § 110(2)(b). Having reviewed the record and the arguments of the parties, we affirm the judgment of the Hardin Circuit Court.

### I. BACKGROUND

On April 9, 2018, three armed and masked men robbed Fast Payday Loans in Elizabethtown. Megan Brown, the only employee working at Fast Payday Loans at the time of the robbery, testified that she could not remember

anything about the faces of the men except that they were black or Hispanic. Two of the men were shorter and the third was taller. She could not identify any of the men.

Larry Austin was working at O'Reilly Auto Parts, located next to Fast Payday Loans, at the time of the robbery. He testified that he saw three men running from the direction of Fast Payday Loans, and that the tallest of the three pointed a gun at him. He identified the person who pointed a gun at him as being the tallest of the three men in a surveillance video from Fast Payday Loans. Austin, however, could not identify any of the men he saw running from Fast Payday Loans.

Ane Peterson was leaving an orthodontist's office that was near Fast Payday Loans with her three children when a car sped past her. She testified that she remembered the car being a green sedan, but her children insisted it was red. She yelled at the car to slow down, and the driver flipped her off. She testified that a black man with a tattoo under his left eye was driving. She observed another black male in the front passenger seat. She saw a man throwing items out of the back-passenger window of the car. She could not identify any of the men in the car.

Donald Young lived in Elizabethtown, not too far from Fast Payday Loans. During the afternoon of April 9, 2018, a red car sped through his driveway and into his yard. Four men got out of the car and scattered. He only got a "slight look at" the man in the passenger seat and could only identify him as a black male. He testified that he only saw the back of the driver, but the

2

driver seemed to be much taller than the other men and was wearing a dark-colored shirt. The driver ran through a privacy fence in his back yard and toward his neighbor's house. Young testified that the police arrived just a few seconds after the men in the red car. Young could not identify any of the men who were in the car.

Officer Dustin Lucas of the Elizabethtown Police Department received the report of the robbery at Fast Payday Loans. Quickly after receiving the report, Officer Lucas observed a red car within which a lot of unusual movement was occurring. Officer Lucas testified that he activated his emergency equipment; however, the car did not stop. He pursued the vehicle, and during the pursuit he saw the occupants of the car throw clothes out of the car windows. Eventually the occupants of the car ditched the car in Young's yard and scattered. Officer Lucas pursued on foot and found Hodge hiding under the porch of a house behind Young's house. This house was the house towards which Young testified the driver of the red car ran.

Shortly after the pursuit, Hodge, along with his three co-defendants, Freddie Nails, Patrick Kelley,[1] and Pedro Gonzalez, were all arrested and charged with committing the robbery at Fast Payday Loans. At Hodge's trial, Kelley testified for the Commonwealth. Kelley testified that he, Hodge, Nails, and Gonzalez drove around Elizabethtown on April 9, 2018 in his red Mitsubishi Galant. They made several stops at liquor stores, and he drank

---

[1] The parties' briefs to this Court use two spellings for Patrick Kelley's name: "Kelly" and "Kelley." We use "Kelley" as it is consistent with the trial court record.

heavily. Nails intended to rob a drug dealer's house but decided there were too many people present. He testified that during the day the group obtained two guns and that Nails wanted to rob the check cashing store. Kelley testified that he eventually passed out, and when he awoke, Gonzalez told him to take the car and wait in a church parking lot near Fast Payday Loans. The other three men got out of the car, and when they returned, Hodge took over driving, speeding away from the scene and the police.

A Hardin County jury convicted Hodge of first-degree robbery, first-degree fleeing or evading, tampering with physical evidence, felon in possession of a handgun, and first-degree persistent felony offender, and recommended a sentence of forty (40) years in prison. Additional facts will be developed as necessary for our analysis.

## II. ANALYSIS

Hodge asserts three claims of error in this appeal. First, Hodge argues that the Commonwealth improperly bolstered Patrick Kelley's testimony. Second, he argues that the trial court erred in allowing the lead detective in the case to testify as to how often he had encountered black men with facial tattoos. Finally, Hodge argues that the Commonwealth's Attorney committed prosecutorial misconduct by making multiple improper comments during his closing argument. We will address each of these alleged errors in turn.

### A. Patrick Kelley's Testimony

The Commonwealth called Patrick Kelley, one of Hodge's co-defendants, as its first witness. Hodge argues that the Commonwealth improperly bolstered

4

Kelley's testimony in three ways, each of which will be discussed in turn. None of the complained of questions were objected to by Hodge, and therefore the alleged errors are unpreserved. Hodge requests we review this issue pursuant to Kentucky Rule of Criminal Procedure ("RCr") 10.26. RCr 10.26 allows this Court to review an unpreserved error if it is palpable, affects the substantial rights of a party, and results in manifest injustice. To determine if an error is palpable, "an appellate court must consider whether on the whole case there is a substantial possibility that the result would have been any different." *Commonwealth v. McIntosh*, 646 S.W.2d 43, 45 (Ky. 1983). To be palpable, an error must be "easily perceptible, plain, obvious and readily noticeable." *Burns v. Level*, 957 S.W.2d 218, 222 (Ky. 1997) (citing BLACK'S LAW DICTIONARY (6th ed. 1995)), *abrogated on other grounds by Nami Resources Co., L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323 (Ky. 2018). A palpable error must be so grave that, if uncorrected, it would seriously affect the fairness of the proceedings. *Ernst v. Commonwealth*, 160 S.W.3d 744, 758 (Ky. 2005). "It should be so egregious that it jumps off the page...and cries out for relief." *Chavies v. Commonwealth*, 374 S.W.3d 313, 323 (Ky. 2012) (Cunningham, J., concurring) (quoting *Alford v. Commonwealth*, 338 S.W.3d 240, 251 (Ky. 2011)).

Hodge argues that the Commonwealth improperly bolstered Kelley's testimony by eliciting testimony during direct examination about his military service. Hodge argues that testimony about Kelley's military service would

"strengthen [Kelley's] credibility in a county known for its military base"[2] and that it had nothing to do with the robbery. Specifically, Hodge complains of two exchanges that occurred during Kelley's direct examination. In the first, which occurred at the beginning of Kelley's testimony, Kelley explained that he was in the United States Army from 2000 to 2009 as a tank systems mechanic in 63 Alpha. Kelley testified that he was deployed to Iraq twice, was stationed at Fort Knox for about a year and a half, and was honorably discharged. In the second exchange, Kelley confirmed that he was "military, deployed, nine years."

The Commonwealth, on the other hand, argues that testimony regarding Kelley's prior military service was admissible background information and did not bolster his credibility. The Commonwealth further argues that even if the testimony did bolster Kelley's credibility, it was admissible, as Hodge attacked Kelley's credibility during cross-examination.

In general, "[a] witness is not permitted to bolster her own testimony unless and until her credibility has been attacked. However, testimony regarding a witness's background is admissible." *Tackett v. Commonwealth*, 445 S.W.3d 20, 32-33 (Ky. 2014) (internal citations omitted). In *Tackett*, the witness testified on direct examination that "she was involved in Beta Club at school and that Beta Club is for students who are involved in community service and who have good grades and character." *Id.* at 32. We found that the witness's testimony about Beta Club was admissible as background

_____

[2] Fort Knox is a United States Army post that is located partially in Hardin County.

6

information, but to the extent that it was bolstering, it was still admissible because the defendant had attacked the witness's credibility in his opening statement. *Id.* at 33.

Like the witness's testimony about Beta Club in *Tackett*, Kelley's testimony about his military service was admissible background testimony. However, to the extent this testimony bolstered his credibility, its admission was in error, albeit harmless, as outlined below. Kelley testified to his military service during his direct examination, before his credibility had been attacked. Unlike in *Tackett* where the defendant attacked the credibility of the witness during his opening statement, Hodge's counsel waived opening statement. Thus, Hodge had not yet attacked Kelley's credibility at the time this testimony was admitted.

Kelley's credibility, however, *was* attacked on cross-examination during his subsequent testimony. We have previously held "that when rehabilitation evidence is admitted before credibility is attacked, any error is harmless as long as credibility is, in fact, later impeached." *Fairrow v. Commonwealth*, 175 S.W.3d 601, 606 (Ky. 2005). If the type of error described above has previously been considered harmless by this Court, then it is clear that the error in this case did not rise to the level of palpable error.

In addition to eliciting testimony about Kelley's military service, the Commonwealth referred back to this testimony during its closing argument. Hodge argues that such reference compounded the prejudice that came from the improper bolstering of Kelley's credibility during his testimony. However, by

7

the time closing argument had occurred, Kelley's testimony had been attacked, and therefore rehabilitation, or bolstering, evidence was admissible. *See Samples v. Commonwealth*, 983 S.W.2d 151, 154 (Ky. 1998). In closing argument, counsel for both sides are permitted to comment on all admitted evidence and inferences that can be reasonably drawn from that evidence. *Padgett v. Commonwealth*, 312 S.W.3d 336, 350 (Ky. 2010). In its closing argument in this case, the Commonwealth was merely referencing admitted evidence, and thus no error occurred.

Hodge also argues that the Commonwealth improperly bolstered Kelley's credibility by eliciting testimony that he had never been in legal trouble before the incident that gave rise to the indictment. This testimony was elicited two times during Kelley's direct examination. Like the testimony about Kelley's military service, this complained of testimony was admitted prior to Kelley's credibility ever being attacked. Therefore, to the extent the testimony bolstered Kelley's credibility, it was admitted in error. However, because Kelley's credibility was eventually attacked, we do not find said error palpable.

Finally, Hodge argues that it was error to admit testimony that the Commonwealth's Attorney would "hurt" Kelley if Kelley did not tell the truth. The relevant portion of Kelley's direct examination is as follows:

Commonwealth: My office prosecuted you, correct?

Kelley: Yes, sir.

Commonwealth: You met me how long ago?

Kelley: Two days ago, three days ago.

8

Commonwealth: Alright. And what was the first thing I said to you, that I want you to tell me what?

Kelley: The truth.

Commonwealth: And if you didn't tell me the truth, I told you I was gonna hurt you, didn't I?

Kelley: Yes, sir, you did.

Commonwealth: Not physically, but put you in prison for a longer time, correct?

Kelley: Yes, sir, okay.

Commonwealth: And you are going to prison, correct?

Kelley: Yes, sir.

Hodge argues that the above quoted testimony improperly bolstered Kelley's credibility. We disagree.

No evidence was presented at trial that Kelley was testifying for the Commonwealth pursuant to a plea agreement, and no evidence was admitted concerning the terms of any plea agreement that may have existed between the Commonwealth and Kelley. Regardless of whether truthful testimony was a condition of Kelley's plea agreement with the Commonwealth, Kelley could be prosecuted for the felony offense of perjury in the first degree[3] if he lied while testifying under oath. It would be reasonable for a jury to believe that when the Commonwealth's Attorney stated he would "put [Kelley] in prison for a longer

---

[3] KRS 523.020 states, in relevant part, "(1) A person is guilty of perjury in the first degree when he makes a material false statement, which he does not believe, in any official proceeding under an oath required or authorized by law;.... (3) Perjury in the first degree is a Class D felony."

time" if he did not tell the truth during his testimony, the Commonwealth's Attorney was referring to a new felony prosecution for first-degree perjury. The possibility of a person being prosecuted for lying under oath "adds little to the witness's oath, but for that very reason it poses little risk of short-circuiting the jury's credibility determination." *Brown v. Commonwealth*, 313 S.W.3d 577, 628 (Ky. 2010). Therefore, we find no error in the admission of this testimony.

## B. Detective Joe Schwartz's Testimony

Hodge next argues that the trial court erred in allowing Officer Schwartz to testify regarding how frequently he had encountered black men with facial tattoos. Our standard of review on evidentiary issues is abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

On direct examination, immediately after eliciting testimony that Officer Schwartz had been a police officer for six years, the Commonwealth asked, "Can you tell me how frequently you run into individuals, specifically African American males, which the defendant is, that have face tattoos?" Defense counsel objected on the basis that Officer Schwartz had not "established himself as an expert in African Americans and expert in tattoos." The trial court overruled the defense objection, finding that the question did not require expert testimony and was merely common knowledge. Officer Schwartz then

10

testified that he could "probably count on one hand or less, the people that would have that."

To this Court, Hodge argues first that the testimony elicited was expert opinion testimony, not common knowledge, and therefore required that the officer be qualified as an expert. In the alternative, Hodge argues that even if this testimony was not expert testimony, it was not "[h]elpful to a clear understanding of the witness' [sic] testimony or the determination of a fact in issue" as required by Kentucky Rule of Evidence ("KRE") 701.[4]

We first review Hodge's argument that the testimony elicited from Officer Schwartz was expert testimony. In order for testimony to be considered expert testimony, as opposed to lay testimony, it must rely on "scientific, technical, or other specialized knowledge." KRE 702. Testimony about how many times Office Schwartz had encountered African American men with face tattoos was neither scientific nor technical, and it did not require any specialized knowledge. This testimony was based solely on his personal observations, albeit those observations occurred during his employment as a police officer. As such, Officer Schwartz's testimony was not expert testimony, but was lay

---

[4] KRE 701 states in full:

> If the witness is not testifying as an expert, the witness' [sic] testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
>
> (a) Rationally based on the perception of the witness;
>
> (b) Helpful to a clear understanding of the witness' [sic] testimony or the determination of a fact in issue; and
>
> (c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

testimony. The trial court did not err in admitting this testimony without qualifying Officer Schwartz as an expert.

Hodge further argues that if Officer Schwartz's testimony was lay testimony, as opposed to expert testimony, it was not helpful to the jury in resolving a fact at issue. This argument, however, was not presented to the trial court. This Court has stated on numerous occasions that "appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), *overruled on other grounds by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010). We have previously said that "[a] new theory of error cannot be raised for the first time on appeal." *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999); *see also Young v. Commonwealth*, 50 S.W.3d 148, 168 (Ky. 2001) ("Error is not preserved if the wrong reason is stated for the objection."). Therefore, we decline to address this argument.

### C. Commonwealth's Closing Argument

Hodge's final argument is that the Commonwealth's Attorney made multiple improper statements during his closing argument, each of which amounted to prosecutorial misconduct warranting reversal of Hodge's conviction. Specifically, Hodge argues that the Commonwealth improperly: (1) stated Rashad Lattimore tried to "game the system"; (2) stated Hodge tried to game the system and used Hodge's co-defendants' convictions as substantive evidence of Hodge's guilt; and (3) attacked Pedro Gonzalez's credibility by expressing personal disdain for Gonzalez. Finally, Hodge argues that if none of

these comments alone warrant reversal, the cumulative effect of the Commonwealth's improper arguments during closing warrant reversal.

"Prosecutorial misconduct is 'a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment.'" *Commonwealth v. McGorman,* 489 S.W.3d 731, 741–42 (Ky. 2016) (quoting *Noakes v. Commonwealth,* 354 S.W.3d 116, 121 (Ky. 2011)). One way in which the misconduct can occur is through an improper closing argument. *Dickerson v. Commonwealth,* 485 S.W.3d 310, 329 (Ky. 2016) (citing *Duncan v. Commonwealth,* 322 S.W.3d 81, 87 (Ky. 2010)). Any allegation of misconduct must be viewed in the context of the overall fairness of the trial. *McGorman,* 489 S.W.3d at 742 (citing *St. Clair v. Commonwealth,* 451 S.W.3d 597, 640 (Ky. 2014)). To justify reversal, the Commonwealth's misconduct must be "so serious as to render the entire trial fundamentally unfair." *Soto v. Commonwealth,* 139 S.W.3d 827, 873 (Ky. 2004) (quoting *Stopher v. Commonwealth,* 57 S.W.3d 787, 805 (Ky. 2001)).

"If the misconduct is objected to, we will reverse on that ground if proof of the defendant's guilt was not such as to render the misconduct harmless, and if the trial court failed to cure the misconduct with a sufficient admonition to the jury." *Duncan,* 322 S.W.3d at 87 (citing *Barnes v. Commonwealth,* 91 S.W.3d 564 (Ky. 2002); *Partin v. Commonwealth,* 918 S.W.2d 219 (Ky. 1996)). However, if no objection is made, the Court "will reverse only where the misconduct was flagrant and was such as to render the trial fundamentally unfair." *Id.*

13

In considering an allegation of prosecutorial misconduct in closing argument, the Court considers the arguments as a whole while remembering that counsel is granted wide latitude during closing argument. The longstanding rule is that counsel may comment on the evidence and make all legitimate inferences that can be reasonably drawn therefrom.

*Murphy v. Commonwealth,* 509 S.W.3d 34, 50 (Ky. 2017) (internal citations and quotation marks omitted).

Hodge's first claim of prosecutorial misconduct lies in the Commonwealth's statement that Rashad Lattimore tried to game the system. Hodge called Lattimore as a witness solely to testify as to prior consistent statements Hodge had made to him. The Commonwealth objected on hearsay grounds, and the trial court sustained the Commonwealth's objection, excluding Lattimore's testimony. Lattimore was then excused from the stand after offering no testimony of substance. In closing, the Commonwealth commented on this by saying, "People don't tell the truth. They try to game the system. And this is what this is to the defendant, it's a game. He's trying to game the system. Rashad Lattimore, Rashad Lattimore tried to game the system. Rashad Lattimore showed up yesterday, I have no idea why." Defense counsel then objected, but the objection was overruled by the trial court.

As previously stated, counsel is given wide latitude in closing argument and is free to draw any and all reasonable inferences from the evidence. However, "evidence that has been excluded by the trial judge cannot be referred to in closing argument." *Barnes,* 91 S.W.3d at 569 (citing *Mack v. Commonwealth,* 860 S.W.2d 275, 276–77 (Ky. 1993); *Moore v. Commonwealth,* 634 S.W.2d 426, 438 (Ky. 1982); *Nolan v. Commonwealth,* 87 S.W.2d 946, 950

14

(Ky. 1936)). Further, Hodge has a Sixth Amendment right to "have compulsory process for obtaining witnesses in his favor." The Commonwealth's statement that Lattimore "tried to game the system" is not a fair inference that could be drawn from the evidence admitted at trial. There was no evidence to indicate that Lattimore himself had any role in his being called as a witness, and Lattimore could not be expected to know whether his testimony would be admissible in Hodge's trial. Finally, whether Lattimore tried to game the system was completely irrelevant to the question of Hodge's guilt of the indicted offenses. This portion of the Commonwealth's closing argument was improper, and the trial court erred in permitting it.

Because Hodge objected to this improper statement by the Commonwealth, we will reverse only if "proof of the defendant's guilt was not such as to render the misconduct harmless, and if the trial court failed to cure the misconduct with a sufficient admonition to the jury." *Duncan*, 322 S.W.3d at 87. We view this misconduct in the context of the overall fairness of the trial. *McGorman*, 489 S.W.3d at 742. After reviewing the entirety of the trial court record, we do not believe this improper statement by the Commonwealth had any material effect on the jury's finding of guilt. As previously noted, the statement had no relevance to Hodge's guilt or innocence, and we can see little chance that the jury was impacted by it. Given the overall fairness of the trial and the other evidence against Hodge, the Commonwealth's improper statement about Rashad Lattimore was harmless.

15

Hodge next argues that the Commonwealth's Attorney committed prosecutorial misconduct when he argued that Hodge was "gaming the system" by proceeding to trial and when he used Hodge's co-defendants' convictions as substantive evidence of Hodge's guilt. Specifically, Hodge argues that the following argument made during the Commonwealth's closing was improper:

> [Hodge] was looking for a deal himself. Why are you looking for a deal if you didn't do anything? Why look for a deal? I didn't give him a deal. I didn't give Pedro [Gonzalez] a deal. I didn't give Kelley a deal. They're all guilty. Freddie Nails. In prison. They're guilty. The difference being is that at least three of them took responsibility for their actions. You got one who wants to game the system.

Hodge argues that it was palpable error for the Commonwealth to criticize him for his decision to go to trial.

Both the United States Constitution and the Kentucky Constitution guarantee a criminal defendant the right to a trial by jury. *See* U.S. CONST. amend. VI[5] and KY. CONST. § 7. It was improper for the Commonwealth to comment on Hodge's exercise of his constitutional right to a jury trial and refer to that exercise as "gam[ing] the system." Hodge did not object, however, so we will not reverse unless "the misconduct was flagrant and was such as to render the trial fundamentally unfair." *Duncan*, 322 S.W.3d at 87.

We employ a four-part test to determine whether a prosecutor's improper comments amount to flagrant misconduct. The four factors to be considered are: (1) whether the remarks tended to mislead the jury or to prejudice the

---

[5] The Fourteenth Amendment makes this portion of the Sixth Amendment applicable to the states. *Duncan v. Louisiana*, 391 U.S. 145 (1968).

16

accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused. *Murphy,* 509 S.W.3d at 54 (internal citations and quotation marks omitted).

Regarding the first part of the test, the Commonwealth's argument that Hodge was "gaming the system" served to prejudice Hodge. In the context of the Commonwealth's comments on a defendant's failure to testify, we have previously held, "[A] comment violates a defendant's constitutional privilege against compulsory self-incrimination only when it was manifestly intended to be, or was of such character that the jury would necessarily take it to be, a comment upon the defendant's failure to testify...or invited the jury to draw an adverse inference of guilt from that failure." *Ragland v. Commonwealth,* 191 S.W.3d 569, 589-90 (Ky. 2006) (internal citation omitted). The Commonwealth's Attorney's comment that Hodge's three co-defendants all "took responsibility for their actions" followed immediately by an argument that Hodge "wants to game the system" compares the actions of the three who pled guilty with Hodge's decision to exercise his right to a jury trial. To a jury of lay people who are not educated in the law, comments like those of the Commonwealth in this case, repeated as they were, in the context within which they were made, would be interpreted as an invitation to draw an adverse inference of guilt from Hodge's exercise of his constitutional right to a jury trial. It is clear to this Court that the Commonwealth's comments met the *Ragland* standard and were prejudicial to Hodge.

17

As for the second and third parts of the test, the Commonwealth's remarks were both extensive and deliberate. The Commonwealth used some iteration of the terms "game" or "gaming the system" eight times in just the first seven minutes of its thirteen-minute closing argument. It is clear that this was a theme chosen purposefully by the Commonwealth's Attorney in his closing.

Finally, we must evaluate the strength of the evidence against Hodge. In this case, there was little direct evidence that Hodge was involved in the robbery of Fast Payday Loans, but there was substantial circumstantial evidence. Patrick Kelley testified that he, Hodge, Nails, and Gonzalez were together the day of the robbery in his red Mitsubishi Galant. He testified that the group discussed robbing the check cashing store, but that he passed out before the robbery occurred. He testified that Hodge, Nails, and Gonzalez all exited the car, while he waited for them in the car in a nearby parking lot. He stated that when the three men returned to the car, Hodge had a red bandana on and took over driving the car. He stated that Hodge did not stop for the police and eventually all four of the men ditched the car in the yard of a residence.

Ane Peterson testified that the driver of a sedan sped past her as the occupants threw items out of the window of the car. She stated that the driver had a tattoo under his left eye. Hodge, in fact, has a tattoo under his left eye. Donald Young testified that the driver of the red sedan, which Kelley identified as his car, ran through his yard toward his neighbor's house. Just minutes later, Officer Dustin Lucas found Hodge hiding under the porch of Young's

18

neighbor's house. When Hodge was apprehended, he was wearing clothes consistent with the clothes one of the robbers wore. This factor weighs in favor of the Commonwealth.

Having found that three of the four factors weigh in favor of Hodge, we hold that the Commonwealth's improper comments about Hodge's exercise of his constitutional right to a jury trial amounted to flagrant prosecutorial misconduct. We will reserve the determination of whether those comments rendered Hodge's trial fundamentally unfair until we have discussed Hodge's other allegations of prosecutorial misconduct.

Hodge also argues that the Commonwealth's closing argument improperly used his co-defendants' convictions as substantive evidence of his guilt. "[I]t is ordinarily improper for the Commonwealth to show during its case-in-chief that a co-indictee has already been convicted under the indictment." *St. Clair v. Commonwealth*, 140 S.W.3d 510, 544 (Ky. 2004). Further,

> It has long been the rule in this Commonwealth that it is improper to show that a co-indictee has already been convicted under the indictment. To make such a reference and to blatantly use the conviction as substantive evidence of guilt of the indictee now on trial is improper regardless of whether the guilt has been established by plea or verdict, whether the indictee does or does not testify, and whether or not his testimony implicates the defendant on trial.

*Tipton v. Commonwealth*, 640 S.W.2d 818, 820 (Ky. 1982) (internal citations and quotation marks omitted). "However, if it is apparent from the record that the defendant did not object to the introduction of this evidence and that the defendant tried to use that information as part of his trial strategy, no

19

reversible error occurred." *King v. Commonwealth*, 276 S.W.3d 270, 277 (Ky. 2009) (citing *St. Clair*, 140 S.W.3d at 544). In this case, the Commonwealth did not use the convictions of Gonzalez, Kelley, and Nails as substantive evidence of Hodge's guilt. Further, Hodge did not object to the introduction of evidence that all three of Hodge's co-defendants had pled guilty, and in fact, used that evidence to further Hodge's defense when he called Gonzalez to testify on his behalf. Therefore, we find no error in the Commonwealth's reference to the convictions of Gonzalez, Kelley, and Nails in its closing argument.

Finally, Hodge argues that the Commonwealth's Attorney committed prosecutorial misconduct when he attacked Pedro Gonzalez's credibility by expressing personal disdain for Gonzalez. Hodge points to two sections of the Commonwealth's closing argument in support of his assertion of palpable error. In the first section, the Commonwealth argued:

> We've reached a point in our society where people just don't care, and we've got to change that. We have to change that. You can't try to...this isn't a game. You can't come up here and sit around looking like Pedro with his Princess Leia man buns and sit up here and lie and laugh. It's not a joke. It's not a game. It's serious.

In the second section, about five minutes later, the Commonwealth argued:

> You know Pedro comes up here. I hate Pedro, okay. Just, I'm telling you, me and him have never gotten along. I find his flippant attitude insulting, about robbing someone, about making a little girl who was at work quit that day. I don't like Pedro, okay. I don't like any of them, but I really don't like Pedro.

The Commonwealth argues that these statements during its closing argument were not improper, as the defendant put Gonzalez's credibility front and center

20

by calling him as a witness to testify that Hodge was not involved in the robbery.

This Court acknowledges that "[g]reat leeway is allowed to *both* counsel in a closing argument. It is just that—*an argument.*" *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987). However, "the fundamental issue is whether the statement is reasonably supported by the evidence." *Murphy*, 509 S.W.3d at 54 (citation omitted) (internal quotation marks omitted). Further, in general, a prosecutor may only offer a personal opinion if it is based on evidence presented at trial. *Slaughter*, 744 S.W.2d at 412. In this case, the Commonwealth's Attorney's personal disdain for Gonzalez is not grounded on evidence in the record, and argument regarding that disdain was wholly inappropriate and improper. However, because no objection was made to this argument, we will only reverse Hodge's conviction if "the misconduct was flagrant and was such as to render the trial fundamentally unfair." *Duncan*, 322 S.W.3d at 87. We will use the same four-part test discussed above to determine whether a prosecutor's improper comments amount to flagrant misconduct.

As to the first part, Hodge was prejudiced by the Commonwealth's improper statements about his personal dislike of Pedro Gonzalez. Gonzalez was a co-defendant of Hodge's and was accused of committing the robbery with Hodge. Hodge called Gonzalez to testify on his behalf. During Gonzalez's testimony, Gonzalez stated that he committed the robbery, but that Hodge was not a part of the commission of the crime. Gonzalez's testimony, and his

21

credibility, was material to Hodge's defense that he did not commit the robbery with which he was charged. The Commonwealth's Attorney's statements of his hatred for Gonzalez directly impacted the jury's perception of Gonzalez's credibility and prejudiced Hodge.

As to the second part, the Commonwealth's remarks were not extensive. They were isolated to less than thirty seconds of the Commonwealth's approximately thirteen-minute closing argument.

For the third part of the analysis, we must determine whether the Commonwealth's improper remarks were deliberately or accidentally placed in front of the jury. The remarks at issue were not remarks that may have merely been a misstatement of a piece of evidence that was admitted at trial. Instead, the remarks were made as a result of a conscious decision by the Commonwealth's Attorney to express his personal feelings for a co-defendant and defense witness in the case.

As discussed above, the fourth part of the test – the strength of the evidence against Hodge – weighs in favor of the Commonwealth. There was substantial circumstantial evidence against Hodge, as previously detailed.

In sum, the results of the four-part test to determine whether the Commonwealth's comments were flagrant misconduct are two factors weighing in favor of Hodge and two factors weighing in favor of the Commonwealth. When two factors of the specialized test for flagrant prosecutorial misconduct weigh in favor of each side, this Court must turn to the general test for whether relief is warranted for prosecutorial misconduct: an examination of the trial as

22

a whole to determine if the improper comments undermined the fairness of Hodge's trial. *See Mayo v. Commonwealth,* 322 S.W.3d 41, 57 (Ky. 2010). This analysis directly addresses Hodge's final argument that the cumulative effect of the Commonwealth's improper closing argument rendered his trial unfair and resulted in a denial of due process. We will also take into consideration the Commonwealth's improper comments about Hodge's exercise of his constitutional right to a jury trial.

Hodge's trial spanned three days during which eleven witnesses were called to testify. The vast majority of that trial was fair and unbiased. While we strongly admonish the Commonwealth to refrain from engaging in this type of behavior in the future, our focus is on the overall fairness of *this* trial, taken as a whole. We cannot hold that the Commonwealth's improper closing argument, as ill-advised as it was, rendered Hodges's trial *as a whole* fundamentally unfair or violated his due process rights. However, the manner within which the Commonwealth's Attorney conducted himself during his closing argument exceeded the bounds of decorum and, under different circumstances, could undermine the fundamental fairness of a trial. We remind the Commonwealth:

> An attorney for the commonwealth should never forget his high position; should never forget it is his duty to protect the innocent just as much as it is his duty to prosecute the guilty. He represents all the people of the commonwealth, including the defendant; he should in an honorable way use every power that he has, if convinced of the defendant's guilt, to secure his conviction, but should always remember he stands before the jury clad in the official raiment of the commonwealth, and should never become a partisan.

*Goff v. Commonwealth,* 44 S.W.2d 306, 308 (Ky. 1931). Further,

23

it is the obligation of the prosecuting attorney to conduct himself with due regard to the proprieties of his office and to see that the legal rights of the accused, as well as those of the Commonwealth, are protected. It is his duty to prosecute but not persecute. He should endeavor to see that justice is meted out and that the accused is dealt with fairly. Above all, there is an obligation that truth and right shall prevail.

*Bowling v. Commonwealth*, 279 S.W.2d 23, 24 (Ky. 1955). Although we admonish the Commonwealth from behaving in this manner in the future, we cannot hold that the Commonwealth's improper comments during closing argument undermined the fairness of Hodge's trial as a whole.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Hardin Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General

24