NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2353-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILLIAM J. SILVERS, III,
a/k/a WILLIAM J. SILVERS,
111, WILLIAM J. SILVER, III,
and WILLIAM SILVER,

    Defendant-Appellant.

_____

Argued September 26, 2023 – Decided November 16, 2023

Before Judges Sabatino, Mawla and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 19-07-0813.

Margaret Ruth McLane, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Margaret Ruth McLane, of counsel and on the briefs).

Leslie-Ann Marshall Justus, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Leslie-Ann Marshall Justus, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

SABATINO, P.J.A.D.

The main issue in this criminal appeal is whether the trial court erred during jury selection in denying defense counsel's requests to remove for cause two potential jurors who are police officers. The officers are employed by police departments in different municipalities from where the alleged offenses occurred, investigated, and were prosecuted, but within the same county.

We reject defendant's contention that because interaction with the county prosecutor's office is inherently a "necessary component of their jobs as police officers," active-duty police officers who work in the same county where the criminal charges arose must be stricken for cause from juries upon a defendant's request.

Instead of applying a categorical bar, we continue the tradition of State v. Reynolds, 124 N.J. 559, 565 (1991), in which the Supreme Court recognized the concerns about the potential bias of police-officer-jurors, but which also declined to endorse a strict policy to remove them for cause. The Court in Reynolds instructed judges "should be inclined to excuse a member of the law enforcement community" from the jury upon a defendant's request, leaving it to the trial courts to perform an individualized assessment of each juror's ability to be fair and impartial. Ibid.

Extending the nuanced approach of <u>Reynolds</u>, we hold that a per se finding of cause to strike a criminal juror in law enforcement should only apply to employees of the same police department or prosecutor's office that investigated or prosecuted the charged offense. To aid trial judges and counsel, we present non-exhaustive factors that should be considered in evaluating, on a juror-by-juror and case-by-case basis, whether there is cause to remove a juror employed in law enforcement. If, on the whole, those factors establish cause, the trial court "shall" remove the juror, as is required under the recently reinforced language of <u>Rule</u> 1:8-3(b).

Applying these principles, we affirm the trial court's decision to deny defendant's request to strike for cause one of the two police officers, as his voir dire elicited insufficient grounds to do so. We do find error with respect to the other officer, based on the responses from that officer during his own voir dire. However, because the latter officer was never summoned to the jury box, the court's error in failing to remove the juror for cause was harmless.

In the unpublished portion of this opinion, we address unrelated arguments raised by defendant on appeal alleging evidentiary and sentencing errors. Having found those arguments lack merit, we consequently affirm defendant's convictions and sentence.

I.

This prosecution of defendant William J. Silvers, III stems from an altercation in which he punched and allegedly tried to choke his then-girlfriend, R.S.[1], on a boat docked on a pier by the Hudson River, and then allegedly threw her off the boat into the river.

At the time of the incident, R.S. and defendant had been in a relationship for about six weeks. According to her account, R.S. left work at around 11:30 p.m. on October 1, 2018. She went to meet defendant, who had brought vodka for each of them. They walked together for about thirty minutes to defendant's boat, where he was living at the time, which was docked on a pier in Hoboken. During the walk, the two of them talked and drank the vodka. According to R.S., she consumed about a half a pint of vodka during the walk but did not feel intoxicated.

R.S. and defendant went to the boat's cabin to sleep. While in bed together, they were conversing. R.S. requested that defendant give her the money from her paycheck that she said he owed her. According to R.S.'s testimony, she had arranged for defendant to deposit her paychecks into his bank account because she had lost her identification, and that he had agreed he would pay her the money afterwards. However, defendant began to argue with and yell at R.S. in response to her request in the boat cabin that he pay her the money.

---

[1] We use initials to protect the victim's privacy. R. 1:38-3(c)(12).

R.S. ended the conversation, rolling over onto her side to go to sleep. Defendant continued to yell at R.S. When she turned towards him, he allegedly grabbed her by the throat with both hands, choking her. R.S. could not breathe and struggled to choke him back or pull his hands off her. Defendant removed his hands but began punching her in the face and back of the head.

As described by R.S., she tried to escape, but defendant kept hitting her, striking her chest and back, and blocked the exit of the cabin by kicking and pushing her back into the boat. She eventually made it out of the cabin to the side of the boat. Realizing she could not safely get off the boat, R.S. shouted for help.

According to R.S.'s trial testimony[2], defendant then picked her up by her shorts and the back of her neck and threw her into the Hudson River. R.S. swam to shore, but defendant was waiting for her. Defendant left R.S. to get a rescue tube, giving her an opportunity to climb a fence and escape. R.S. made her way to a nearby apartment building, where the concierge called 9-1-1.

A patrolman from the Hoboken Police Department responded to the call at around 2:30 a.m. Observing that R.S. was wet and visibly injured, he called for an ambulance. EMTs arrived and attended to R.S. After receiving medical

---

[2] By contrast, the defense presented trial testimony from an EMT who stated that R.S. told her "she fell from a boat," rather than being thrown.

treatment briefly at a local hospital, R.S. filed a criminal complaint against defendant.

The Hudson County Prosecutor's Office procured an indictment against defendant, charging him with second-degree aggravated assault by purposely attempting to cause serious bodily injury, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault by obstructing the victim's breathing, N.J.S.A. 2C:12-1(b)(13); and third-degree criminal restraint, N.J.S.A. 2C:13-2(a).

The case was tried before a Hudson County jury over four days in August 2021. The State presented four witnesses: R.S., the concierge, the Hoboken police officer who had responded to the 9-1-1 call, and a detective from the Hoboken Police Department who investigated the case. Defendant did not testify on his own behalf. He called two EMTs and a physician's assistant who had attended to R.S., the custodian of records from the local hospital, and the Hoboken police detective who was the lead investigator on the case.

Defense counsel argued in summation that R.S.'s account of the incident was implausible. Counsel asserted it was unlikely that defendant, who is short in stature, could have hoisted R.S. and thrown her into the river in the manner R.S. described. Counsel also noted that R.S. admitted that defendant had offered to bring her a rescue tube when she was in the water. The defense submitted that the couple merely had an argument, and that R.S. was biased and angry at

defendant because she thought he owed her money. The defense argued that R.S. was intoxicated after drinking about five shots of vodka, and that her recollection of the events was untrustworthy. Through the medical witnesses and records, the defense further asserted R.S. was not seriously injured in the incident, and she had sustained only minor bruises, a contusion on her nose, and a loose tooth.

In addition, defense counsel argued the police had conducted a shoddy investigation. Among other things, counsel noted the lead detective admitted to speaking with R.S. before taking her recorded statement and misplacing his interview notes, which he failed to turn over in alleged violation of Attorney General Guidelines. The detective did not try to find video surveillance footage that might have captured the events or bank deposit records that might have corroborated her narrative.

The jury found defendant guilty of the lesser included offense of third-degree aggravated assault (which requires proving only a risk of significant bodily injury, not serious bodily injury), and criminal restraint. The jury acquitted defendant of the charge of aggravated assault by obstruction of breathing.

At sentencing in January 2022, the trial court found defendant qualified as a persistent offender under N.J.S.A. 2C:44-3 because he had been convicted

of at least two crimes since turning the age of eighteen and had been released from confinement only seven-and-a-half years before the present offenses. The court noted defendant had several previous instances of domestic violence, some of which resulted in final restraining orders.

The court found several pertinent aggravating factors: two, N.J.S.A. 2C:44-1(a)(2) (severity of harm to victim); three, N.J.S.A. 2C:44-1(a)(3) (risk of recidivism); six, N.J.S.A. 2C:44-1(a)(6) (extent and severity of defendant's prior criminal history); and nine, N.J.S.A. 2C:44-1(a)(9) (need for deterrence). The court identified no mitigating factors.

Based on this analysis, the court sentenced defendant to a custodial term of five years, with two-and-a-half years of parole ineligibility. At the same hearing, the court sentenced defendant in a separate matter, pursuant to a plea agreement, to a concurrent four-year custodial term for third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(12), of a different victim, an offense which had occurred while he was on pretrial release for the present case.

On appeal, defendant argues the following points in his counseled brief:

> POINT I
>
> THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENSE REQUEST TO STRIKE FOR CAUSE TWO ACTIVE-DUTY HUDSON COUNTY POLICE OFFICERS.
>
> POINT II

THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL AFTER THE COMPLAINING WITNESS TESTIFIED THAT DEFENDANT HAD PREVIOUSLY DONE THE EXACT THING FOR WHICH HE WAS ON TRIAL.

POINT III

THE FAILURE TO STRIKE ULTIMATE-ISSUE TESTIMONY THAT THE COMPLAINING WITNESS WAS ASSAULTED REQUIRES REVERSAL OF DEFENDANT'S CONVICTIONS.

POINT IV

DEFENDANT MUST BE RESENTENCED BECAUSE THE COURT IMPROPERLY CONSIDERED ARRESTS THAT DID NOT LEAD TO CONVICTIONS IN FINDING AGGRAVATING FACTORS.[3]

II.

A.

The especially lengthy jury selection in this case consumed ten days in late July and early August 2021. The first stage of jury voir dire was conducted

---

[3]   Defendant has also submitted a handwritten pro se supplemental brief. Although it is repetitive and fails to designate which arguments were not raised below, he essentially argues that: (1) his case should have been prosecuted under maritime jurisdiction; (2) the case was poorly investigated; (3) the victim's statement was improperly taken; (4) his arrest was illegal, for unspecified reasons; (5) the State's evidence was inadequate; and (6) the victim was not seriously injured and at most he only should have been charged with simple assault.

remotely by videoconference before the process continued in the courthouse.

Five times during the selection process, a prospective juror with a law enforcement occupation was interviewed. The first one, a United States Customs and Border Patrol agent, was readily excused without a formal challenge because she stated she "probably" would not have an open mind about the case. The other four jurors with law enforcement positions were challenged for cause by defense counsel. Two of those four jurors were excused by the court.

The first such juror excused by the court was a county correctional officer who was working at the same Hudson County facility that was holding defendant. Although the juror attested he could be fair and impartial, the trial court released him because he might encounter defendant at the correctional facility.

The other law enforcement officer removed from the jury pool by the court for cause was a Port Authority police officer. He disclosed that he recognized the name of the lead detective from a work-related email chain and admitted that, given the nature of his work and training, he "possibly" could not have an open mind about this case.

The two prospective jurors employed in law enforcement who are the subject of this appeal are a Jersey City police officer, R.M., and a Union City

police officer, A.A.[4]  We detail information elicited from them and the efforts by defense counsel to remove them.

Juror R.M.

During voir dire, Juror R.M. told the court that he was an active-duty police officer in Jersey City.  He had been on the police force for six years.  R.M. stated that he did not know any of the people involved in the case.  He maintained that he would treat police-officer-witnesses just like any other witness, and that he could remain fair and impartial.

R.M. volunteered that his unit "answer[s] a lot of calls in regards to domestic violence."  He also disclosed that he is "familiar with criminal restraints and aggravated assault" and had "dealt with them especially through domestic violence a lot" in the course of his employment.

R.M. asserted that jury charges and the law were "very self-explanatory and . . . it's not really very hard to follow what is written on both criminal restraints or aggravated assault," numerically citing to the court both statutory provisions.  R.M. attested that he could set aside his understanding of the law: "I personally don't believe that this is going to affect my ability in any way, but

---

[4]  As is the present custom, we use initials for these prospective jurors.

I just wanted to make it clear, you know, to [t]he [c]ourt." The court directed R.M. to return for the in-person jury selection scheduled for the following week.

Defense counsel moved to excuse R.M. for cause because of his police experience. In particular, defense counsel noted that R.M. (1) cited to the criminal statutes; (2) has "great experience" responding to the incidents of domestic violence and abuse; and (3) "likely knows what the penalties are." Counsel argued "even if [R.M.] says he can set aside his own experience it's impossible for him not to bring his vast experience with these types of issues and . . . his independent knowledge of New Jersey [l]aw to his deliberations in this case." Counsel also cited the Supreme Court's opinion in Reynolds, which we will discuss more in Part II(B).

The trial court rejected these entreaties, finding that "the fact that [R.M. is] a police officer . . . shouldn't exclude him, just like it wouldn't exclude a lawyer just because he might be a criminal defense attorney" and that "nothing that he stated . . . would suggest that he couldn't be fair and impartial."

On the next court date, defense counsel renewed her motion to strike R.M. from the jury for cause. Among other things, counsel stressed that Jersey City police officers such as R.M. are supervised by the Hudson County Prosecutor's Office that was prosecuting defendant. She argued both law enforcement

entities work "incredibly closely" with each other and are considered one entity with respect to discovery obligations.

The prosecutor responded that the chains of command in the Hudson County Prosecutor's Office and the Jersey City Police Department "would likely not believe" that prosecutors "supervise" local police officers. The prosecutor also noted the Jersey City Police Department is one of thirteen different law enforcement agencies, albeit the largest one, that works with his office.

The trial court again denied defendant's motion to strike R.M. for cause, finding that the law enforcement entities involved were "separate."

Juror A.A.

Juror A.A.'s voir dire occurred two court days later. His examination was more abbreviated than that of R.M.

A.A. told the court that he had been working as a patrolman for three years in the Union City Police Department. A.A. stated he believed that a police officer is "equally" likely to tell the truth as a witness who is not a police officer. He also attested that he could remain impartial and believed that he had to consider the charges and the law with an open mind. He did not mention the types of cases that he worked on as an officer.

Defense counsel moved to strike A.A. for cause from the jury panel. She noted that he is on active duty with a police department located in Hudson

County, which means that he must work with County prosecutors, even if he had never dealt with the assistant prosecutor assigned to defendant's case.

The trial court rejected defendant's arguments and empaneled A.A. for the in-person jury selection phase. At that proceeding, defense counsel renewed her request to strike A.A. for cause when he was called up to the sitting jury. Counsel cited to Reynolds and reiterated that the Prosecutor's Office works closely with all police agencies in the county.

The court again denied the request, finding A.A.'s demeanor and responses to questioning reflected that he would be fair and impartial.

Defense counsel then used her tenth peremptory challenge to remove A.A. from the jury. A.A. was accordingly excused. R.M. was never placed in the jury box, so there was no occasion for the defense to use a peremptory strike to remove him.

Defense counsel exhausted the remainder of her twenty peremptory challenges on other seated jurors. The court and the prosecutor made defense counsel aware of that depletion of peremptories after she responded "No" when the court asked if she was done. The record does not reveal which empaneled jurors defense counsel would have struck if more peremptories had been available. In any event, it is undisputed that neither R.M. nor A.A. were on the empaneled jury that convicted defendant.

B.

The juror removal issue posed here, which is the focus of defendant's primary argument for reversal, concerns important constitutional and legal principles.

The Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution both guarantee criminal defendants the right to trial by an impartial jury. State v. Little, 246 N.J. 402, 414 (2021) (citing State v. Williams, 93 N.J. 39, 61 (1983)). A defendant is "entitled to a jury that is free of outside influences and [that] will decide the case according to the evidence and arguments presented in court in the course of the criminal trial itself." Williams, 93 N.J. at 60.

To achieve these constitutional objectives, a trial court has an "independent obligation . . . 'to take all appropriate measures to ensure the fair and proper administration of a criminal trial' . . . ." Little, 246 N.J. at 414 (quoting Williams, 93 N.J. at 62). "A 'vital aspect' of that responsibility is to ensure the impaneling of only impartial jurors by ferreting out potential and latent juror biases." Ibid. (quoting Williams, 93 N.J. at 62-63).

A critical responsibility of the trial court's supervisory function is to decide whether a juror should be removed for cause. The parties can move to

strike a juror for cause, or the court can sua sponte excuse a juror on that basis. State v. Andujar, 247 N.J. 275, 296 (2021).

For-cause excusal of jurors is appropriate "when it appears that they would not be fair and impartial, that their beliefs would substantially interfere with their duties, or that they would not follow the court's instruction or their oath." Ibid. After a comprehensive study of juror selection practices in our State sparked by Andujar, the Supreme Court revised Rule 1:8-3(b) in 2022 to now read, "If the court finds there is a reasonable basis to doubt that the juror would be fair and impartial, the court shall grant the for-cause challenge . . . ." (emphasis added).

The use of the word "shall" within the revised Rule strengthened the trial court's obligation to assure that jurors are not empaneled when cause for their dismissal is apparent. This change was part of systemic reforms adopted by the Court to promote a fairer jury selection process and to reduce bias and discrimination. The reforms include new presumptive restrictions on the exercise of peremptory challenges based on discriminatory or improper stereotypes, see Rule 1:8-3A, but are accompanied by "a low threshold . . . for the granting of a for-cause challenge." Report & Recommendations of the Subcommittee on Voir Dire & Peremptory Challenges 3 (2022) (emphasis added). The subcommittee unanimously recommended "a liberal standard in

dismissing jurors for cause," recommending the "relaxed" Rule 1:8-3(b) language that the Court ultimately adopted. Id. at 8-9.

Case law instructs that "[a]n appellate court reviews the trial court's jury-related decisions under the abuse of discretion standard." State v. Brown, 442 N.J. Super. 154, 182 (App. Div. 2015) (citing State v. R.D., 169 N.J. 551, 559 (2001)). "[T]he trial court is vested with broad discretionary powers in determining the qualifications of jurors and [so] its exercise of discretion will ordinarily not be disturbed on appeal." State v. Jackson, 43 N.J. 148, 160 (1964). Challenges to excuse jurors for cause are thus reviewed for abuse of discretion. State v. Simon, 161 N.J. 416, 466 (1999).

Notwithstanding that general deference, "an appellate court is not bound by a determination when the 'particular circumstances present such a strong likelihood of prejudice that, as a matter of law,' the juror should have been removed." State v. Loftin, 191 N.J. 172, 192 (2007) (quoting State v. Biegenwald, 106 N.J. 13, 91 (1987)). Moreover, defendant's arguments in this appeal implicate generic questions of law about the eligibility of active-duty police officers to serve on criminal juries in the counties where they work. We consider those generic questions of law de novo. Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995), see also State v. Hyland, 238 N.J. 135, 143 (2019).

Before the applicable statutes were revised in 1995, police officers and persons "directly or indirectly connected with the administration of justice," along with other various classes of persons, were categorically ineligible to serve on juries in this State. See N.J.S.A. 2A:69-1 (amended by L. 1995, c. 44). That broad swath of categorically ineligible jurors produced serious difficulties in yielding eligible jurors, more severely within certain counties. The system also placed undue burden on citizens not covered by the statutory exemptions by repeatedly asking them to serve.

A 1982 Report of the Jury Utilization and Management Task Force commissioned by the Supreme Court found the exercise of then-existing statutory exemptions resulted in excusal rates across counties of 7% to as high as 56% during the 1980-1981 court year. 111 N.J.L.J. Index 37 (1983). The Task Force recommended the reform of those occupation-based exemptions, noting "[t]here is little sound basis for the across-the-board exemption of occupations." Ibid. The Task Force recognized arguments that the exemptions for police, fire and medical personnel were grounded in the public necessity of the services they provide. Ibid. However, the Task Force noted that vacations, holidays, and medical absences ordinarily can be accommodated within those occupations without endangering the public, and the same accommodations could be arranged when their members are called to jury service. Ibid.

Despite the 1982 Report, the statutory exemptions remained unchanged for over a decade. In June 1992, the New Jersey Law Revision Commission issued a Report and Recommendation Relating to Juries (the "Law Revision Report"). That report echoed the 1982 Task Force's criticisms of the broad occupational exemptions. Id. at 2-3. The Law Revision Report recommended replacing those exemptions with provisions permitting excusal from jury service for severe hardship and deferral of service to a future date. Id. at 3. The Commission noted that "[a] person's occupation is a factor to be considered in relation to a person's suitability to sit on a particular jury, not as an absolute bar to jury service." Id. at 4. (emphasis added).

In 1995, the present statute, N.J.S.A. 2B:20-1, was enacted, which substantially narrowed the classes of persons ineligible for jury service. Among other things, the categorical exemptions for police personnel and for persons connected to the administration of justice were removed, as the Task Force Report and the Law Revision Report had advocated. See L. 1995, c. 44.

Apart from these statutory developments, case law has addressed the question of whether a citizen employed in law enforcement should be removed for cause from a criminal jury because of that citizen's occupation. The leading opinion in our State is Reynolds, a case which both parties have cited to us. 124 N.J. at 565.

19

In Reynolds, the Court addressed whether the trial court in a murder case should have stricken for cause two criminal jurors—a Deputy Attorney General in the Division of Law assigned to represent the Lottery Commission, and an investigator in the Division of Criminal Justice. Id. at 563. Neither juror was a police officer. Under the then-existing statute, the Court concluded that neither juror, although a "member[] of the law-enforcement community," was covered by the statutory exemption for persons connected to the administration of justice. Id. at 564.

Reynolds addressed whether the two jurors were otherwise ineligible "for cause." Both jurors knew defense counsel in the case professionally from previous litigation involving the Lottery Commission and as past colleagues in the Division of Criminal Justice. Id. at 565. The investigator was also challenged because, as defense counsel argued to the trial judge, his connections with "the enforcement of the penal laws of this State" allegedly resulted in a "proclivity to assume that State Police don't lie." Id. at 566.

The trial judge declined to remove either juror for cause. Id. at 565-66. In doing so, the judge found credible the jurors' sworn assurances that they would remain fair and impartial, noting their demeanor in responding to questions during voir dire reflected impartiality and fairness. Id. at 566-67. The

Court upheld the trial court's decision. However, the Court issued the following guidance:

> To avoid challenges such as this, we believe that in criminal cases a court, on request of a defendant, should tend to favor excusal of a member of the law-enforcement community.
>
> [Id. at 568 (emphasis added).]

In adopting this "tendency" approach, the Court observed in Reynolds that, in contrast to parties in civil cases, "a criminal defendant would not be so easily assuaged" by law enforcement jurors' affirmations of impartiality. Id. at 565. "Although strictly speaking an excusal for cause may not be required, prudence counsels that a court, on request of a defendant in a criminal case, should be inclined to excuse a member of the law enforcement community." Ibid.

The practice of other states on this police-as-jurors issue is varied.[5] Most states currently do not have case law or statutes prohibiting officers from serving on juries in criminal cases. Courts more commonly perform case-by-case analyses to determine if law enforcement officers summoned as jurors have actual biases that require their excusal for cause. Circumstances that indicate

---

[5] See Law Enforcement Officers as Qualified Jurors in Criminal Cases, 72 A.L.R.3d 895 (1976) (discussing the varied practices among the states).

an officer may be impermissibly biased include a relationship with a witness, a close connection to the prosecutor's office, and a "pro-police" mentality.

That said, some states categorically prohibit police officers from sitting on juries in criminal trials because of the potential for—or appearance of—partiality on the jury.[6]

The only state with a statutory prohibition, Oklahoma, provides that "[j]ailers, or <u>municipal or state law enforcement officers</u> . . . shall be eligible to serve on <u>noncriminal actions only</u>."  38 Okla. Stat. Ann. § 28 (emphasis added).

---

[6]  <u>See, e.g.</u>, <u>King v. State</u>, 328 S.E.2d 740, 741 (Ga. Ct. App. 1985) (holding that "if a police officer were challenged for cause in a criminal case, the challenge [must] be granted"); <u>Glover v. State</u>, 552 S.E.2d 804, 806 (Ga. 2001) (reaffirming "that a full-time police officer who is challenged for cause in a criminal case must be excused," though declining to extend this rule to other law enforcement personnel who do not have the power to arrest); <u>Ellis v. State</u>, 736 S.E.2d 412, 420-21 (Ga. 2013) ("A prospective juror must be excused for cause if he is employed as 'a full-time police officer with arrest powers.' . . . That rule does not require a trial court, however, to strike for cause a former law enforcement officer."); <u>State v. Butts</u>, 159 S.W.2d 790, 793 (Mo. 1942) ("It seems incompatible with justice that a defendant who has been apprehended by the police, and against whom police officers are going to testify, should be tried by a jury made up of police officers [from that same police department]."); <u>Commonwealth v. Jones</u>, 383 A.2d 874, 877 (Pa. 1978) (holding that the trial court erred in refusing to strike a police officer forcause where the officer was a member of the same police force which had officers testifying in the case and the credibility of the police was a key issue); <u>Rippy v. State</u>, 550 S.W.2d 636, 642 (Tenn. 1977) (noting that "active or career police officers tend to have an inherent prejudice that should preclude their [jury] service.").

By contrast, opinions from many other jurisdictions expressly do not limit police from serving on juries in criminal trials.[7]   In these more permissive jurisdictions, additional circumstances are generally required to demonstrate that an officer's potential bias warrants excusal for cause.  See, e.g., Edwards,

_____

[7]  See, e.g., State v. Hill, 848 P.2d 1375, 1381 (Ariz. 1993) (reviewing a police officer's inclusion in a criminal jury for abuse of discretion, even on request for forcause removal); State v. Benedict, 119 A.3d 1245, 1250-54 (Conn. App. Ct. 2015) (declining to excuse a municipal police officer despite at least some supervision of his department by state police who investigated the case because insufficient detail linked the potential juror to any officer involved in the case); Hall v. State, 12 A.3d 1123, 1125-27 (Del. 2010) (recognizing "law enforcement officers are not automatically disqualified from serving as jurors in criminal cases" but holding the juror, a correctional officer, should have been excused because defendant was charged with assault of another inmate in the same facility where the juror worked, incentivizing the juror to convict to "promote[] a less hostile work environment and the personal safety of the officer."); State v. Ballard, 747 So.2d 1077, 1079-80 (La. 1999) (overruling precedent automatically disqualifying police from serving on criminal juries in favor of a juror-specific approach); Commonwealth v. Ascolillo, 541 N.E.2d 570, 573 (Mass. 1989) ("We decline to adopt a rule that the mere fact that a prospective juror is a police officer, in the absence of a showing of prejudice or partiality, or connection with the particular facts involved at trial, would form the basis to sustain a challenge for cause."); State v. Hinojosa, 242 S.W.2d 1, 7 (Mo. 1951) (limiting the holding in Butts, 159 S.W.2d at 793, to a preference that police officers not be taken from their official duties to fill a jury panel); State v. Edwards, 716 S.W.2d 484, 488 (Mo. Ct. App. 1986) ("the connection of prospective jurors with law enforcement should be carefully scrutinized[,]" not subject to automatic disqualification); State v. Montez, 789 P.2d 1352, 1372 (Or. 1990) (rejecting the argument that "common sense and human experience" suggest police officers cannot be fair and impartial jurors in criminal cases); Commonwealth v. Kelly, 134 A.3d 59, 61-65 (Pa. Super. Ct. 2016) ("A prospective juror's status as a law enforcement officer in and of itself is insufficient to require disqualification as a juror in a criminal case . . . [I]f a police officer has a 'real relationship' to the case, he must automatically be excluded").

716 S.W.2d at 486-88 (holding that "additional circumstances" indicating partiality were needed to justify excusal for cause); Shane v. Commonwealth, 243 S.W.3d 336, 338 (Ky. 2007) (as modified Apr. 9, 2008) (holding trial court's denial of challenge for cause to excuse juror who said "he was 'absolutely' pro-police and that he did not believe an officer would lie under oath" was abuse of discretion).

Turning back to our own state, we bear in mind the systemic changes to jury selection adopted by our Supreme Court after the comprehensive review prompted by Andujar. Among those reforms is the adoption of a new provision regulating peremptory challenges, Rule 1:8-3A. The Official Comment to Rule 1:8-3A explains that certain associations historically used by counsel to strike jurors peremptorily can reflect conscious or unconscious improper discrimination and are presumptively invalid. Pressler & Verniero, Current N.J. Court Rules, off. cmt. on R. 1:8-3A (2024). The new provision places a burden on the party using such a peremptory challenge to show that the reason for the strike is related to the demands of being a juror in that particular case. Ibid. The comment cites Wash. R. Gen. Application 37(h) for those presumptively invalid reasons for a peremptory strike. Ibid. Some reasons that relate to relationships with law enforcement include:

> (i) having prior contact with law enforcement officers;
> (ii) expressing a distrust of law enforcement or a belief

that law enforcement officers engage in racial profiling; (iii) having a close relationship with people who have been stopped, arrested, or convicted of a crime; (iv) living in a high-crime neighborhood; . . . (viii) having friends or family members who were victims of crime . . . .

[Wash. R. Gen. Application 37(h).]

This provision, although not expressly applicable to challenges for cause, heralds a new post-<u>Andujar</u> approach in which past experiences with the criminal justice system—whether as a crime victim or as a person accused of an offense—do not automatically justify for-cause excusal. Instead, our present revised system disfavors the invocation of traditional stereotypes and relies more upon the individual responses and characteristics of the juror. To be sure, we do not equate a juror's status as a law enforcement officer with membership in a group that has historically been discriminated against in jury selection. Our point instead is that since <u>Andujar</u>, the process is now more focused upon the experiences and voir dire responses of individual prospective jurors.

The circumstances in this case suggest it may be useful for the case law of our own state to be amplified, in light of the Court's general guidance thirty-two years ago in <u>Reynolds</u>, and the more recent developments reforming jury selection after <u>Andujar</u>. The Court's decision in <u>Reynolds</u> to eschew a categorical ban on police officers serving as criminal jurors remains unaltered. 124 N.J. at 565. So does the Court's admonition in <u>Reynolds</u> that trial courts,

on a criminal defendant's request, "should be inclined to excuse" a juror who is a member of the law enforcement community.  Ibid.

What factors should guide this inclination?  The Public Defender argues that active-duty police officers within the same county in which a criminal defendant is being prosecuted "must work closely with" the prosecutor's office "on a regular basis" as "a necessary component of their jobs."  As argued by the Public Defender, that relationship is indicative of an inability as jurors to consider the evidence "with the measure of impartiality required by the law." (citing Jackson, 43 N.J. at 160).  On the other hand, the State, through the Attorney General, maintains that a case-by-case and juror-by-juror assessment of impartiality is more appropriate than presuming that police officers from other municipalities within the same county cannot be fair and impartial jurors.

Having considered these arguments, the diverse practices of other states, and the less-categorical thrust of the post-Andujar jury selection reforms, we offer the following non-exclusive factors to guide the trial court's individualized assessments of whether sufficient cause exists to remove a criminal juror employed in law enforcement:

- whether the juror works for a federal or state agency, rather than a municipal or county law enforcement agency;

- whether the juror has a civil enforcement position, rather than a job focused on the enforcement of criminal laws;

- the scope and nature of the juror's job functions, and whether the juror is on active duty;

- the frequency and nature of the juror's interactions, if any, with the county prosecutor's office;

- subject to confidentiality restrictions, the nature and extent of any involvement by the juror in internal affairs investigations conducted by the prosecutor's office;

- whether the case involves any subjects or criminal laws that have been encountered by the juror within the scope of employment;

- whether a law enforcement officer is alleged to be a victim or defendant in the case;

- the nature of the State's case and the anticipated defenses, including whether the investigation will be criticized as deficient;

- the juror's responses to the court's voir dire questions and whether they suggest partiality;

- the court's perception of the juror's candor and demeanor;

- any other pertinent information bearing on the juror's ability to be fair and impartial.

These factors are neither complex nor surprising. They align with several of the considerations mentioned in Reynolds or noted in the out-of-state cases. When developed through open-ended queries, the relevant information may readily emerge from the prospective juror's narrative responses. No one factor is dispositive, although the factor concerning the extent of the juror's interactions with the prosecutor's office ordinarily should have prominent weight. By illustration, it can be pertinent whether the juror works in the police

records room or as a school crossing patrol, rather than in the homicide or sex crimes units that regularly interact with prosecutors. We anticipate this list of factors will aid judges and attorneys to suitably develop the record in future cases.

We reject the Public Defender's approach to require the for-cause removal of active-duty police officers from other municipalities within a county because those officers might interact with the county prosecutor's office. That approach is overbroad and out of step with post-Andujar reforms that disfavor categorical removals.

That said, we do endorse one categorical principle. Specifically, if the juror is employed in any capacity by the same police department or the same prosecutor's office that is involved in the present case, that juror must be excused for cause upon counsel's request. There is too close a nexus and too high a risk of partiality in those same-office circumstances. See, e.g., Jones, 383 A.2d at 877; Butts, 159 S.W.2d at 793-94.

## C.

We proceed to apply these principles to the trial court's rulings declining to strike jurors R.M. and A.A. for cause. As a threshold matter, we are satisfied that defendant has standing to appeal those rulings, even though neither R.M. nor A.A. sat on the empaneled jury. The fact that defendant used a peremptory

challenge on A.A., and thereafter exhausted the remainder is sufficient prejudice to enable the appeal.  State v. Bey, 112 N.J. 123, 154 (1988).

With respect to R.M., we conclude the trial court erred in denying defendant's request to strike him for cause.  His voir dire answers reflected "a lot" of experience with criminal investigations, such as the present case, concerning domestic violence.  He exhibited strong familiarity with the pertinent criminal statutes, even referring to them by section number ("12-1 or 13-2").

Although R.M. did not personally know the officers and detectives involved in this case, and his past interactions with the prosecutor's office were not explored, we agree with defendant that his special job-related knowledge of domestic assault situations and the applicable criminal laws raised substantial concerns about his eligibility to serve.  In addition, as we noted above in describing defense counsel's trial strategy and summation—including calling the lead police detective as a hostile witness—the defense argued this case was poorly investigated for multiple specific reasons.

Bearing in mind the Court's adoption in Reynolds of a general inclination to grant defendants' requests to remove police officers for cause, we conclude the trial court misapplied its discretion in denying defendant's request to remove R.M.  That error, however, was harmless because defense counsel did not

expend a peremptory challenge to remove R.M., and he was not on the jury that tried the case.

The circumstances of A.A. present a closer call. As we noted, the voir dire of A.A. was brief and shorter than R.M.'s questioning. A.A. was not familiar with any of the witnesses and said nothing about past or present interactions with the prosecutor's office. Unlike R.M., A.A. did not say he had substantial experience with domestic violence investigations. He had only been a police officer for three years. Additionally, unlike R.M., A.A. did not cite or refer to the criminal statutes.

Based on his responses and commitment to be open-minded and fair, the court denied defendant's request to excuse A.A. for cause. We do not regard this ruling to be an abuse of discretion on the limited record that was developed. We therefore affirm the ruling.

III.

The rest of the arguments presented by defendant warrant no more than brief discussion.

A.

Defendant argues that his convictions should be reversed because the trial court abused its discretion by not granting a mistrial after R.S. described a prior bad act by defendant. Specifically, during its direct examination of R.S., the

State asked: "out of those 20 to 25 times that you were on his boat before October 2nd, 2018, how many other times did you end up in the Hudson River?" R.S. answered: "One other time he pushed me in, but he passed it off as a joke. And the water was—it was low tide and that was in the beginning, like, the first couple of days that we had known each other." Defendant objected that this testimony violated N.J.R.E. 404(b)(1), the prior bad acts rule, and moved for a mistrial. The trial court found the testimony divulged "not necessarily a prior bad act." Nevertheless, the court struck the testimony from the record and instructed the jury to disregard it in their deliberations.

A mistrial is unnecessary if an "appropriate alternative course of action" is available, such as delivery of a curative instruction. State v. Smith, 224 N.J. 36, 47 (2016) (citing State v. Allah, 170 N.J. 269, 281 (2002)). When inadmissible evidence erroneously reaches the jury, new trials should not be ordered unless the error was "clearly capable of producing an unjust result." State v. Yough, 208 N.J. 385, 397-98 (2011) (citing R. 2:10-2).

The State argues any prejudice was mitigated by the court's curative instruction and by striking the question and testimony from the record. We concur with the State's position. It was improvident for the witness to refer to the prior situation in which defendant pushed her into the water as an alleged joke. The State presented no valid exception under N.J.R.E. 404 to justify this

"bad act" testimony. Even so, the court appropriately issued a cautionary instruction to the jury to disregard the brief testimony. It is presumed that jurors will heed the trial judge's instructions. State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019).

Further, the prejudice from this fleeting allusion to a "joke" is not obvious. The prosecutor did not refer to the remark in his closing argument. In addition, the measured verdict rendered by the jury does not reflect hostility to the defendant's arguments. The jury acquitted him of the choking charge and found him guilty of only the lesser included assault offense, reflecting skepticism about the actual severity of the injuries the victim claimed. We affirm the court's denial of a mistrial.

B.

Defendant next argues that his convictions should be reversed because the trial court committed reversible error by admitting hearsay statements by medical personnel who referred to the incident between him and R.S. as an "assault." We reject this contention.

On cross-examination by the State of the physician's assistant who treated R.S., the witness and prosecutor each described the cause of the injuries as an "assault" since that term had been used in the related medical report. Defense counsel objected to the second mention of the term "assault" as inadmissible

hearsay. The trial court sustained the objection at sidebar, although it did not strike the testimony or instruct the jury to disregard it.

On appeal, defendant relies on State v. Gardner, 51 N.J. 444 (1968), which holds that statements related to the cause of a patient's injuries are inadmissible hearsay not covered by the hearsay exception for statements made for the purpose of diagnosis or treatment, presently codified as N.J.R.E. 803(c)(4). Further, defendant contends the term "assault" is a legal conclusion for the jury to find after considering the underlying facts, and therefore is not a proper subject of opinion testimony. See State v. McLean, 205 N.J. 438, 459-60 (2011). These arguments are unavailing.

The trial court did not abuse its discretion by admitting this testimony referring to the wording of the medical record. The report relaying R.S.'s hearsay description of an "assault" was admissible under N.J.R.E. 804(c)(4) as a statement made for the purpose of medical diagnosis or treatment. Her disclosure to the medical provider about being "assaulted" was a "reasonably pertinent" detail to medical diagnosis and treatment. Palmisano v. Pear, 306 N.J. Super. 395, 400 (App. Div. 1997). The term "assault" is a common shorthand reference to hitting or kicking, distinguishing acute injuries from systemic traumas such as a car accident. The description was reasonably pertinent to how the medical providers would diagnose and treat R.S.

Even if we were to deem this portion of the trial testimony improper, it was not capable of causing an unjust result. R. 2:10-2. The term "assault" was inherently part of the vernacular of the case. Defendant was charged with an aggravated "assault." The prosecutor repeatedly and appropriately used the word "assault" in both his opening and closing statements, as did the court in its preliminary and final charges to the jury, without any objection by the defense. A defense witness testified on redirect that R.S. said she had been "beaten . . . kicked, and . . . choked"—all of which are vivid terms akin to "assault." The incremental effect of her hearsay description of the incident to the physician's assistant as an assault was inconsequential. The error, if any, provides no adequate basis to overturn defendant's convictions.

C.

As his appellate counsel's last point, defendant contends he must be resentenced because, during the course of its oral decision at sentencing, the trial court alluded to his previous arrests that did not result in criminal convictions. Defendant argues the trial court's findings of aggravating factors three, six and nine were tainted by these references to arrests.

We discern no reason to remand for resentencing. We acknowledge that in State v. K.S., 220 N.J. 190, 265-66 (2015), the Court held that courts should not rely upon arrests that do not result in convictions as grounds to deny

defendants entry into a pretrial intervention ("PTI") program unless their guilt of those offenses are independently established by the record.

But even if K.S. were extended from the PTI context to sentencing, the references to arrests here manifestly did not tip the scales. As the sentencing judge rightly noted, defendant has six previous indictable convictions. Those convictions were more than ample to justify the findings of the various aggravating factors. In addition, the five-year term imposed, given defendant's status as a persistent offender, was neither an abuse of discretion nor a shock to the conscience. State v. Roth, 95 N.J. 334, 365 (1984).

## D.

The arguments raised in defendant's pro se supplemental brief, insofar as they do not overlap with his counsel's points, lack sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2353-21

35